DAWKINS, J.
This is an action in damages by the brothers and sisters of Joseph Mequet for his death, alleged to have been caused through the fault and negligence of an employé of the defendant in carelessly driving a large lumber truck around the corner of Rampart and Canal streets in the city of New Orleans in such a manner as to strike and kill, almost instantly, the said Mequet. The grounds of negligence charged are that the truck was being driven at an excessively high rate of speed on the main thoroughfare of the city and in violation of a city ordinance, and that the turn at the corner was made too short and with such speed as to cause the rear wheels to cut very close to the curbing, where deceased was standing, knocking him down and resulting in his death, as stated.
Defendant filed exceptions of vagueness and of no cause or right of action, which do not appear to have been passed upon by the lower court. For answer, defendant denied all of the allegations of the petition, and pleaded contributory negligence on the part of the deceased.
The case was tried before a jury below, which rendered a unanimous verdict for the defendant, and from a judgment pursuant thereto the plaintiff has appealed.
Opinion.
[1] The case presented by this record is such that, if the verdict and judgment of the lower court had been in favor of plaintiff, we would have felt impelled to affirm its finding of fact; but the verdict was unanimous, and the plaintiff did not apply for a new trial, so as to give us the benefit of the judge’s views, and these circumstances require that we give great weight to the jury’s conclusions.
[2] The defendant, through his employé, was operating upon the main thoroughfare of the city a very dangerous machine, at a point where the driver saw and knew that a large number of pedestrians had gathered to await its passage, and the duty was upon him, in such circumstances, to use extreme care. The machine which killed the deceased was composed of a large auto truck, with an extra trailer attached, having a length over all of some 30-odd feet; and, instead of having one pivot upon which the front wheels could turn, as in the case of ordinary four-wheeled vehicles, permitting the rear ones to describe an arc depending upon the suddenness or abruptness of the turn, it had two pivots, which made it possible, not only for the rear end to describe an arc, but which would allow the front end to turn practically at right angles; thereby necessitating that, in turning a corner, the driver should proceed to a much greater distance beyond the usual point for ordinary vehicles before attempting to turn. And this, of itself, likewise added to the danger, because' of the *367 fact that, in proceeding straight ahead to clear the corner, those standing by might easily have been misled to think that the machine would continue across the street, rather than turn into it, and thereby be thrown off their guard in watching out for the rear. The deceased was struck in the passageway for pedestrians leading across Rampart street at a point estimated from 3 to 6 feet from the curb on the river side, on the south side of Canal street, by the truck coming out Rampart. The testimony is conflicting as to whether or not the driver stopped before entering Canal street, as well as to the rate of speed at which the truck was moving and also as to the care with which the turn was made; ' but we are unable to say, in view of the jury’s finding, who saw and heard all but two of the witnesses testify, that the driver was negligent.
[3] The burden of proof, of course, was upon plaintiff to show negligence on the part of defendant, and the plea of contributory negligence was a special defense, which the latter had to support, once his own fault had been established. We think that the record does not establish contributory negligence in the deceased.
[4] Automotive vehicles have become a very important and necessary part of the business and social life of the people, and, in view of their advantages and benefits, are permitted to operate upon the public streets and highways, though carrying with them great potential possibilities of danger and destruction. Society, therefore, in conceding them the right to operate, exacts of those taking their advantages a high degree of care in avoiding the known evil results which follow a different course. On those portions of the highways, known to be used by such vehicles, between the points provided for the passage of pedestrians, the latter, in attempting to cross, do so in large measure at their peril, subject to the requirement that the drivers of such vehicles shall not knowingly or wantonly strike and injure them. But at the points provided for the passage of pedestrians they have the right to assume that the operators of such machines will observe that high degree of care imposed by the circumstances. No other condition is consistent with the common and necessary right to use such avenues of intercourse. The frequent occurrence of collisions and accidents argue most forcefully for a rigid enforcement of all traffic regulations intended to prevent such occurrences. Otherwise, the individual who, through choice or necessity, adopts the original mode of locomotion provided by nature, must “take his life and limb in his own hands.” We do not mean by this that he is to be excused for failing to use his own senses to avoid being injured; but the greater duty and care rests upon those who use these dangerous agencies carrying such great possibilities of harm.
Eor the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.
O’NIELL, J., dissents.