LOTTINGER, Judge.
This is a suit for damages as a result of injuries sustained when plaintiff was struck by a vehicle driven by defendant’s minor son while attempting to cross Jefferson Street in the City of Lafayette,' Louisiana. The intersection of these streets is a wide one, each street being of sufficient width to allow for two lanes of traffic in addition to two parking lanes. Traffic at the intersection is controlled by a traffic signal. ’ On February 23, 1948, at about 7:00 P. M., the plaintiff, an elderly gentleman of some seventy-three years of age, was walking in an easterly direction along the northern sidewalk of Vermilion Street, when in *652 reaching said intersection, he attempted to cross Jefferson Street and was struck toy a motorcycle operated by defendant’s son, Alton Barichnivich. It appears that Breaux was crossing with his head lowered and against a red light. He had traversed about one-quarte'r, or some eight feet, of Jefferson Street before being struck. The evidence indicates that young Barichnivich was traveling at a speed of from eight to fifteen miles per hour, that a light mist was falling, and that the pavement was wet. No traffic -was going in either direction alofig Jefferson Street and no cars were parked on Jefferson Street near the intersection so as" to obstruct the view of either party. However, the said intersection is regarded as a busy one, The impact threw Mr. Breaux to the street and he was severely injured for a man of his age.
Mr. Breaux instituted this suit against Elmer A. Barichnivich for damages in the amount of $10,000. Mr. Barichnivich is the father of the unemancipated minor. A short time before trial, Mr. Breaux lost his mental faculties and it was necessary, for him to be interdicted and Mrs. Fernest Romero, his daughter, was appointed his curator. On motion of plaintiff, Mrs. Romero was substituted as plaintiff in this matter.
The lower court gave judgment in favor of defendant, and, accordingly, dismissed plaintiff’s suit. Plaintiff brings this appeal under forma pauperis.
The evidence conclusively shows that poth parties were guilty of negligence. Mr. Breaux attempted to cross Jefferson Street against the traffic signal and with his head lowered. There is no evidence as to whether he looked to ascertain whether the way was clear of traffic before stepping into the street. On the other hand, the evidence shows that young Barichnivich had a clear and unobstructed view of the street ahead. At the moment of the accident, there was no traffic going in either direction along Jefferson Street, and had young Barichnivich been keeping a proper lookout, he could easily have seen and avoided hitting Breaux. The plaintiff bases his action for recovery on the doctrine of last clear chance.
Three eyewitnesses were introduced at trial of this matter. Chester Credeur, a witness introduced by plaintiff, had been proceeding easterly along Vermilion Street, and at the moment of the accident was stopped, second in line, awaiting the change of the red light. He stated that he saw Mr. Breaux crossing Jefferson Street in the pedestrian lane; that Mr. Breaux was the only pedestrian crossing Jefferson at the time. He also testified that there was no traffic, other than young Barichnivich, proceeding along Jefferson Street at the time. He further testified that the weather was “fair enough”; that “the seeing was clear”, and that the intersection was brightly lighted. The testimony shows that Cre-deur was some thirty-five feet from Breaux and that there was no obstruction to his view of Breaux. He stated that Barichni-vich had plenty of room to pass on either side of Breaux.
Two police officers of Lafayette, Wilbert Breaux and Dudley Thibodeaux, were introduced as defense witnesses. They were stopped in a patrol car, first in line, awaiting the change of the red light on Vermilion Street. Their testimony was substantially the same as that of Credeur. In addition, Officer Breaux testified, that he, on seeing the motorbike a short distance from Mr. Breaux, told Officer Thibodeaux “Watch if the old man don’t get run over by that scooter.” Officer Thibodeaux testified that at the time Officer Breaux made this statement, the motorbike was some twenty-five feet beyond the pedestrian lane, in which Mr. Breaux was crossing. All the above witnesses testified that Mr. Breaux had traversed some eight feet of Jefferson Street when he was hit.
Young Barichnivich testified in part, as follows:
“Q. When you reached the point of intersection of Vermilion, and Jefferson Streets what happened? A. Well, as I approached the intersection I looked to see if anyone was there to the right and left. I saw the Police car in front of the Bank *653 as I approached the intersection. I didn't see anybody in the street attempting to cross at all.
“Q. And when you got to the intersection what happened ? A. Somebody walk-ed out and hit my scooter. '
It should be noted that Breaux was between the police car and young Barichni-vich. If Barichnivich could see the police car, then there was nothing to impede his view of Mr. Breaux, as the police car was some thirty-five feet beyond Breaux, according to the testimony of the three witnesses. Upon being asked the question as whether there was anything to impede his view other than the inclement weather, young Barichnivich answered “No.” The only reason young Barichnivich gave for not seeing Breaux was the mist’ and' the reflection of the lights on the pavement: We believe that, in view of the fact that he was able to recognize the police car, which was some distance beyond Breaux, and in view of the fact that three witnesses were clearly able to see Breaux from a distance of thirty-five feet, that there was no- reason why young Barichnivich should not have seen Breaux.
Young Barichnivich contended that Breaux “walked out and hit his scooter.” The testimony of Officer Breaux shows that the front portion of the scooter was damaged. Because of the small width of a motor-scooter, the parties must have met at about the same time. However, the greater speed of the scooter would indicate that Breaux was in the position of the impact just about an instant before young Barich-nivich. The front fender and a light, which was located in the middle of the handlebars, were bent. Had Breaux stepped into the scooter, the damage would not have been to the front center of the vehicle.
Testimony shows that a large windshield was located on the handlebars of the bicycle. Officer Breaux testified that he could not see young Barichnivich because of the windshield. The possibility was brought forth by plaintiff that the mist on said windshield was responsible for young Bar-ichnivich not seeing Breaux. Had such been,-the case, then young Barichnivich would not have been able to see and recognize' the patrol car which was parked, awaiting the red light.
We believe, and must conclude, that the overwhelming evidence indicates that young Barichnivich had the' last ' clear chance of-avoiding the accident. Hád he’ been keeping a proper lookout, which he was legally bound to do, he would have seen Mr. -Breaux' in his perilous position and could easily have avoided hitting him.
Defendant relies on Jones v. American Mutual Liability Insurance Company, La.App., 189 So. 169. In that case, the deceased stepped into the street from behind an obstruction when he was hit by an -automobile. The evidence, in that case, shows that Jones had just taken about one step into the street when he-was struck. . The Jones case cannot be compared to the present one, as in that case no opportunity was afforded - the, automobile driver to avoid striking the deceased and, thus, no last clear chance was present.
Defendant also cites Thompson v. Dyer,. La.App., 1 So.2d 433, wherein this court held defendant free of liability from: injuries sustained by plaintiff when he was struck by defendant. ■ The evidence there showed that defendant could not have seen plaintiff until he was six feet from him because of other traffic. However, when defendant did see plaintiff, he took every precaution to avoid hitting him. Again no last clear chance was afforded.
In each of the above mentioned cases, the court found that defendant was unable to avoid the accident. Such is not the case' here. Young Barichnivich had an unobstructed view along a wide thoroughfare in which there was no traffic. He admitted that, had he seen Mr. Breaux, he could have stopped or avoided hitting him. He further admitted that he did not see Mr. Breaux until he hit him. We believe that Jackson v. Cook, 189 La. 860, 181 So. 195, 198, is controlling of the issues presented here. In that case, the Louisiana Supreme Court, speaking through Justice Odom, said: “In the present case the plaintiff was guilty of gross *654 negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of.the driver to look, and, according to the findings of both courts, he was not looking.” See also Iglesias v. Campbell, La.App., 175 So. 145; Maher v. New Orleans Linen Supply Company, La.App., 41 So.2d 101; and Young v. Creegan, La.App., 23 So.2d 820.
In view of the above, we believe that the trial court erred in failing to apply the doctrine of last clear, chance. The lower court, in its written opinion, said:
“It can be said that the general rule is now that the operator of a motor vehicle, or other instrumentality, which may cause injury, has the duty of discovering the peril of a pedestrian on or hear a roadway and of avoiding that person if it is possible to do so by the exercise of reasonable care, even though the peril may have resulted from the negligence of the person himself. This rule is not an absolute, but merely places upon the defendant the duty of explaining why the person was not seen and avoided.
“The case thus resolves itself into the questions—Why was Breaux not seen? Why was the accident not avoided?
We agree with the lower court in the above statement. However, contrary to the lower court, we fail to agree that the defendant has satisfactorily answered the last two quoted questions. From the evidence of all witnesses introduced, with the exception of young Barichnivich, there was no reason whatsoever for his failure to see Mr. Breaux in time before the accident. The operator of a motor vehicle is under an obligation to keep a sharp lookout ahead to discover the presence of those who might be in danger. Jackson v. Cook, supra. Had Barichnivich observed his duty to others, he, by his own admission, would have seen Breaux and would have had ample opportunity to stop or- avoid - hitting him.
Plaintiff seeks recovery in the amount of $10,000. Damages are not itemized in the petition, nor was the evidence adduced on trial as to the amount of damages actually suffered by Breaux. Plaintiff, his daughter, testified that, prior to the accident, he lived alone in a hotel, and earned his own living. Subsequent to the accident, it was necessary for Breaux to live with his daughter. Since the accident, to the time of the trial, Mr. Breaux was unable to bathe or shave himself, he walked with a limp and often complained of his shoulder. It was necessary to have him interdicted and appoint a curator to administer his affairs. However, there is no proof in the record that the injuries received in the accident were the cause of his present mental condition. No hospital, doctor, or medical bills were produced at trial, nor is any claimed. As plaintiff did not know where Breaux was employed prior to the accident, no loss of wages, or amount thereof, is shown.
Breaux suffered multiple fractures of the right ankle and a fracture of the left clavicle. There was evidence of multiple soft tissue contusions on the body. An operation was necessary to the right ankle which consisted of a multiple incision of the ankle with fixation of the body -fragments done through use of metallic screws. The screws were removed by a subsequent operation and a cast applied. He spent some thirty days in the hospital. The injuries were productive of severe pain, however, for a man of his age, he responded satisfactorily to treatment. We believe that an award of $1500 is justified.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered and adjudged that there be judgment herein in favor of plaintiff, Luca Breaux, and against defendant, Elmer A. Barichnivich, in the sum of $1500, with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings.
Judgment reversed.