321 So.2d 46 (1975)
Shelton RITTER et al., Plaintiffs-Appellees,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. 5152.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1975.
Rehearing Denied November 13, 1975.
*47 Dubuisson, Brinkhaus, Guglielmo & Dauzat by William A. Brinkhaus, Opelousas, for defendant-appellant.
J. William Pucheu, Ville Platte, for plaintiffs-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
This is an action for damages resulting from the death of Mrs. Theresa Ritter, who was killed instantly when struck by an automobile being driven by Paul Jean Duplechain. Plaintiffs are the four surviving children of the decedent. The suit was instituted against Southern Farm Bureau Casualty Insurance Company, the liability insurer of the Duplechain automobile. The trial court rendered judgment in favor of plaintiffs, and defendant has appealed.
The issues presented are (1) whether Duplechain, the driver of the automobile, was negligent, (2) whether the decedent also was negligent, barring plaintiffs from recovering, and (3) whether plaintiffs are entitled to recover under the doctrine of last clear chance.
The accident occurred about 5:45 P.M. on December 3, 1970, on Louisiana Highway 29, about two miles south of Ville Platte, in a rural area of Evangeline Parish. Mrs. Ritter's home was located on the east side of the highway. Just before the accident occurred she was observed walking across the highway, from east to west, toward her mail box which was located on the west shoulder of the road. Shortly after she crossed the center line of the highway, and while she was in the southbound lane of traffic, she was struck by an automobile owned by Norman Duplechain and being driven south on that highway by Paul Jean Duplechain, the owner's 17-year-old son. Mrs. Ritter died immediately as a result of injuries which she sustained in that accident.
The highway at that point is a straight, level blacktopped thoroughfare, about 20 feet wide. The shoulders on each side of the hard surfaced slab were about 7½ feet wide. There was a dotted white line along the center of the highway.
The weather was clear, and the highway was dry when the accident occurred. It was dark enough that vehicles traveling on the highway at that time had to use their headlights. The headlights of the Duplechain car were burning, on dimmers, before and at the time the accident occurred. The car was a relatively late model automobile, it was in good mechanical condition, and the brakes worked properly.
Duplechain testified in a deposition taken before trial that he first saw Mrs. Ritter when he was about 120 feet from her. He stated at the trial that he was about 300 feet from her when he first observed her walking across the highway. We think his estimate at the trial was more accurate than the one he made earlier, because of the distance the car skidded before it struck the decedent. The evidence shows that Mrs. Ritter was in the southbound lane of traffic, about two or three feet west of the center line of the highway, at the time she was struck. The left front part of the car struck her. After the accident, her body came to rest in the northbound lane of traffic, about 90 feet south of the point of impact. One of her legs was severed by the blow, and her severed leg also came to rest in the northbound lane of traffic, about 110 feet south of the point of impact.
At the time the accident occurred, Mrs. Ritter was wearing a black or dark green dress or pants suit, except that the upper part of her clothing was decorated with orange flowers. The evidence shows that her dark clothing and the weather conditions made it difficult for a motorist to see her on the highway.
Randy Darbonne was riding as a passenger in the car being driven by Duplechain *48 when the accident occurred. Neither Duplechain nor Carbonne had had any alcoholic beverages to drink, and the evidence indicates that they were observing the road ahead of them just before and at the time of the accident. Both of them saw Mrs. Ritter at about the same time, when she was approximately on the center line of the highway or just as she stepped from the northbound into the southbound lane of traffic.
The evidence shows that the left wheels of the automobile skidded a total distance of 190 feet, the skid marks beginning 160 feet before the car reached the point of impact and continuing 30 feet beyond or south of that point. The right wheels skidded 102 feet, beginning 72 feet north of the point of impact and ending 30 feet south of that point. All of those skid marks began in the southbound lane of traffic, and they continued in a straight line, wholly within that lane of traffic, from the place where they started to the point where the car struck Mrs. Ritter. The skid marks made by the left wheels of the automobile crossed the center line of the highway a few feet south of the point of impact, and it is apparent from those marks that the left wheels traveled 6 to 12 inches into the northbound lane of traffic. The automobile then was turned back into the southbound lane of traffic.
The Duplechain car came to a stop 231 feet south of the point of impact. The evidence shows, however, that after the accident occurred and the car had skidded 30 feet beyond the point of impact, Duplechain let up on his brakes and at the suggestion of his companion he drove the car onto the west shoulder of the highway and parked it. He then ran back to the scene of the accident, went into Mrs. Ritter's home and called the hospital and the State Police.
Duplechain and Darbonne testified that they first saw Mrs. Ritter when she was near the center line of the highway, and that immediately after they saw her Duplechain applied his brakes and began skidding his tires. They stated that Mrs. Ritter stopped for a moment, looked directly at them, appeared to freeze for a moment and then she started to take a step backward. They said that Duplechain was unable to avoid striking her, and that the car struck her when she was about one step west of the center line. Both of these witnesses testified that Duplechain was driving at a speed of from 55 to 60 miles per hour when they first saw the decedent, that both of them were observing the highway ahead of him, and that Duplechain applied his brakes as soon as it was possible for him to see Mrs. Ritter.
Two experts in reconstructing automobile accidents testified at the trial. One of them, Mr. Ray Herd, felt that Duplechain was driving from 66 to 70 miles per hour when he first applied his brakes, but he based that estimate on the assumption that the car was traveling at a speed of 45 miles per hour when it struck Mrs. Ritter. He calculated that the automobile would have to be traveling at least that fast for it to knock the decedent's body through the air a distance of 90 feet. The other expert, Dr. William H. Tonn, concluded that the Duplechain car was traveling at a speed of 60 miles per hour when the brakes were first applied, and that the speed had been reduced to 20 miles per hour by the time the impact occurred. He did not feel that the decedent's body had been hurled through the air 90 feet, but instead he reasoned that it was carried on the hood of the car at least a part of the distance between the point of impact and the point where it came to rest after the accident. The opinion expressed by Dr. Tonn was supported by the testimony of Darbonne, who stated that Mrs. Ritter's body came up on the hood toward the windshield after the impact, and that it then fell off to the left side of the car.
The trial judge rejected the testimony of both of the experts who testified at the trial, and he concluded from the remaining *49 evidence that the sole cause of the accident was the excessive speed of Duplechain and his failure to keep a proper lookout.
We have decided that Mrs. Ritter was negligent, that her negligence was a proximate cause of the accident, and that Duplechain did not have the last clear chance to avoid the accident. In view of those findings, it is unnecessary for us to determine whether Duplechain was or was not negligent.
We conclude that when Duplechain first observed Mrs. Ritter walking in a westerly direction on or near the center line of the highway, he was about 300 feet from her. At that time another automobile being driven by Domday Ardoin was approaching the scene of the accident from the south. The Ardoin vehicle was about 300 yards (or 900 feet) from the scene of the accident when Duplechain was about 300 feet from it. Ardoin testified that when he saw the headlights of the Duplechain car "swinging from right to left," he began applying his brakes. The lights on the Duplechain vehicle did not swing from right to left until after the impact had occurred. Ardoin then noticed an object in the road ahead of him, so he stopped, walked over to the object and found that it was the body of Mrs. Ritter. He stated that his lights were burning on dim as he approached the scene of the accident.
It is apparent that when Mrs. Ritter started to walk across the highway, probably to go to her mail box, the Duplechain car was approaching from her right and the Ardoin vehicle was approaching from her left. The headlights on both vehicles were burning, and Duplechain was close enough to Mrs. Ritter that she should have realized that it was impossible for her to safely cross the highway before his car would reach her. The fact that she was struck shortly after she crossed the center line shows that she began walking across the highway, in front of oncoming vehicles, when she did not have time to complete her crossing.
Under those circumstances we conclude that Mrs. Ritter was negligent, and that her negligence was a proximate cause of the accident, barring her survivors from recovering in this case.
Plaintiffs contend, however, that young Duplechain had the last clear chance to avoid the accident.
In Fontenot v. Travelers Indemnity Company, 134 So.2d 330 (La.App. 3 Cir. 1961), which involved a case similar to the instant suit, we listed the circumstances which must exist before the doctrine of last clear chance can be invoked, as follows:
"For the successful invocation of the doctrine of last clear chance in a case of this kind, it is necessary that the following facts or circumstances be established: (1) that the pedestrian was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the driver of the motor vehicle actually discovered or was in a position where he should have discovered the pedestrian's peril; and (3) that, at that time, the driver of the motor vehicle, with the exercise of reasonable care, could have avoided the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; Newton v. Pacillo, La.App. 2 Cir., 111 So.2d 895 (Certiorari denied); O'Dell v. Hood, La.App. 2 Cir., 126 So.2d 373 (Certiorari denied)."
At least two (the first and the third) of the three elements essential for invoking last clear chance are missing in the instant suit.
The evidence does not show, for instance, that Mrs. Ritter was unaware of her position of peril, or that she was unable to extricate herself from it. On the *50 contrary, the evidence shows that she at least should have seen the approaching Duplechain car and thus should have been aware of it before she began to cross the highway. It also shows that Mrs. Ritter stopped and looked toward that approaching vehicle after she had stepped into the southbound lane, and that at that time she still could have stepped back into a place of safety but failed to do so.
Mrs. Ritter was 69 years of age at the time the accident occurred. The evidence shows, however, that she was a very active and busy person and was not disabled in any way. She kept her own house, cared for her chickens, worked in her garden and drove her own car. The evidence indicates that she was agile enough to have stepped out of the way of the Duplechain car, even after she entered the southbound lane of traffic, if she had exercised reasonable care.
The third element necessary for invoking last clear chance is that the driver of the motor vehicle must have been able to avoid the accident after he discovered or should have discovered the danger. In this case we find that young Duplechain saw the decedent as soon as it was possible for him to do so under the circumstances. He immediately applied his brakes and skidded up to and beyond the point of impact. The evidence shows that he had no control over the direction his car traveled while it was skidding. He thus could not have avoided the accident after he discovered or should have discovered that the decedent was in a position of peril.
Our conclusion is that the doctrine of last clear chance is not applicable here.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, rejecting plaintiffs' demands, at their costs. The costs of this appeal are assessed to plaintiffs-appellees.
Reversed.