356 So.2d 400 (1978)
Mrs. Vera Ruppel BAUMGARTNER, Mrs. Shirley Baumgartner McDonald and Henry H. Baumgartner, Jr., Individually and for and on behalf of Henry H. Baumgartner, Deceased and his Estate,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 60210.
Supreme Court of Louisiana.
January 30, 1978.
Dissenting Opinion March 1, 1978.
Rehearing Denied March 15, 1978.
*401 Frank W. Lagarde, Jr., Connolly, Labranche & Lagarde, New Orleans, for plaintiffs-applicants.
Harvey L. Strayhan, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for defendants-respondents.
DIXON, Justice.
Writs were granted in this case to review a judgment of the Court of Appeal reversing the trial court. Plaintiffs are the survivors of a pedestrian who died one month after receiving injuries when he was hit by a car driven by William N. Morgan. The trial judge granted judgment for the plaintiffs. The Court of Appeal found both decedent *402 and defendant negligent, found that the defendant did not have the last clear chance, and held that the plaintiffs were barred from recovery by the decedent's negligence. Baumgartner v. State Farm Mutual Auto. Ins. Co., 346 So.2d 277 (4th Cir. 1977).
Trial began June 5, 1976. The accident occurred October 9, 1971, a few minutes after 7:00 p. m., at the intersection of Canal Boulevard and French Street in New Orleans. Morgan was driving a 1970 Chevrolet lake bound on Canal Boulevard, with a passenger, Mrs. Curtis. Mr. Baumgartner, wearing dark clothing and a light colored hat, was crossing from the easterly to the westerly side of the north bound lane of Canal Boulevard. It was dark enough for headlights and street lights to be turned on. Morgan said when he was in the area of the intersection he saw Baumgartner close to the middle of the street, crossing from Morgan's right to his left, walking normally, carrying a paper bag. Mrs. Curtis said she saw Baumgartner at the moment Morgan applied the brakes, and was thrown to the floor by the force of deceleration of the car.
Both Morgan and Mrs. Curtis said Baumgartner was about 15 feet ahead of the car when they first saw him in the pedestrian crosswalk. Morgan's estimate of distance is probably in error; the police, in measuring Morgan's skid marks, noted that one was 46 feet long, ending about a car length beyond the 11 foot crosswalk. Morgan's speed was pretty well established at 30 mph, or 44 feet per second. In the normal reaction time, 3/4 second, he would have traveled about 33 feet before skidding 20-30 feet into the crosswalk. The precise point of impact was not determined, but Morgan was in his left lane during the entire time, next to the neutral ground. Baumgartner was struck by the front of Morgan's car, hit the windshield and slid off the hood onto the neutral ground when the car stopped.
Baumgartner did not remember anything about the accident. There were no other witnesses to the accident. An expert accident investigator testified for the plaintiffs; both sides and the Court of Appeal relied on his findings (he performed tests to establish Morgan's speed and a "co-efficient of friction," and made examinations and measurements of the accident scene) but reached different conclusions. The expert testified that Baumgartner would not be considered a danger until he had traversed about 6 of the 28 foot width of Canal Boulevard, and could, at that point, have been easily seen by a motorist approaching approximately 200 feet distant. He also testified that Morgan could have come to a full still stop 115 feet from impact or could have avoided the accident merely by slowing down.
Baumgartner was carrying a purple K & B bag containing a bottle of Coca-Cola syrup and a bottle of whiskey. The whiskey bottle was broken in the accident and was empty, but the seal on the bottle had also been broken. There was evidence of the odor of alcohol on Baumgartner's breath and medical testimony about a history of alcohol consumption which complicated the diagnosis with the possibility of alcoholic withdrawal symptoms. Morgan testified that Baumgartner gave no evidence of having seen the approaching automobile, in spite of the noise of brakes and horn.
The trial judge found that Morgan had the last clear chance to avoid the accident but failed to see what he could or should have seen or take evasive action.
A majority of the appellate court apparently found the trial court's factual conclusions to be erroneous. Relying upon the expert's testimony as did the trial court, and, using mathematical formulae, the court determined that Baumgartner would have been a foot or two to the right of Morgan's traffic lane at the time when Morgan became unable to stop in time to avoid the accident. Therefore, the court concluded, Baumgartner could have halted his progression into Morgan's path. Thus, the decedent, and not Morgan, had the last clear chance to avoid the accident, and decedent's own contributory negligence barred plaintiffs' recovery.
The dissenting judges of the Court of Appeal determined that Baumgartner was somewhat intoxicated at the time of the *403 accident and was unaware of his peril and, due to his condition, was unable to extricate himself to avoid the collision. Hence, the dissenters reasoned, Baumgartner did not have a last clear chance as found by the majority of the court.
The last clear chance doctrine, as applied in Louisiana, has been explained:
". . . [T]hough the plaintiff may have been guilty of negligence which may in fact have contributed to the accident, yet if the defendant could in the result of the exercise of ordinary care and diligence have avoided the mischief which happened and did not do so, then the plaintiff's negligence will not excuse the defendant and the defendant's last negligence renders him responsible." Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine § 58(e) (1977). (Emphasis added by author).
The last clear chance doctrine was created to escape the harsh effects of the contributory negligence defense which operates, in its strict application, as an absolute bar to a plaintiff's recovery.[1] However, certain limitations on a plaintiff's reliance on the doctrine began to appear. In some cases the courts would deny recovery where the defendant's negligence preceded that of the plaintiff; in other words, where defendant did not in fact have the last chance to avoid the accident. Plaintiffs also were often denied recovery where their negligence was concurrent with the defendant's negligence and continued to the point of injury.[2]
Courts later began to ignore the continuing negligence limitation. In Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936), a pedestrian whose negligence continued up to the time of the accident was allowed to recover where the defendant motorist had actually discovered plaintiff's perilous position and could have avoided injuring her by acting immediately upon such discovery. The theory upon which Rottman was based became known as the "discovered peril" doctrine. Rottman was extended further in Jackson v. Cook, 189 La. 860, 181 So. 195 (1938), which introduced the "apparent peril" doctrine. In Jackson a motorist who did not see the plaintiff pedestrian's peril but should have (if he had kept a sharp lookout ahead) was held liable for the damages incurred. The court held that plaintiff's own negligence would not preclude his recovery where defendant either appreciated plaintiff's peril or should have with the exercise of reasonable care and attention at a time when he could have prevented the injury.
The Court of Appeal in the instant case based its conclusion on the fact that Baumgartner had the last opportunity to avoid the collision. Defendant was negligent in failing to see Baumgartner crossing the street from a distance at which he could have stopped. But this negligence was prior in time to Baumgartner's negligence in stepping into the Morgan vehicle's path when the former could have stopped his progression and avoided being struck.
We find that the evidence does not establish that Baumgartner was drunk at the time of the accident or intoxicated to the extent that his mental faculties were affected so that he was incapable of removing himself from the path of the approaching vehicle. It is clear, however, that Baumgartner, who continued to walk at the same stride with his head down, was oblivious to the vehicle bearing down on him with brakes screeching and horn blaring. The Court of Appeal's application of mathematical formulae to conclude that Baumgartner had the last opportunity to avoid the accident might not have been incorrect. It should not, however, have barred his recovery.
*404 It is well settled in our jurisprudence that the first duty of those operating motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Rottman v. Beverly, 183 La. at 955, 165 So. at 156. ". . . [W]hat they can see they must see and in legal contemplation they do see; . . . their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability." Jackson v. Cook, 189 La. at 868, 181 So. at 197.
Our law imposes an additional burden upon motorists approaching a pedestrian crosswalk to use more than ordinary care to see what is ahead; they must expect that people may be crossing and be prepared for that possibility. In Mequet v. Algiers Mfg. Co., 147 La. 364, 84 So. 904 (1920), during the early history of automobile traffic, this court stated:
". . . On those portions of the highways, known to be used by such [motor] vehicles, between the points provided for the passage of pedestrians, the latter, in attempting to cross, do so in large measure at their peril, subject to the requirement that the drivers of such vehicles shall not knowingly or wantonly strike and injure them. But at the points provided for the passage of pedestrians they have the right to assume that the operators of such machines will observe that high decree of care imposed by the circumstances. . . . We do not mean by this that he [the pedestrian] is to be excused for failing to use his own senses to avoid being injured; but the greater duty and care rests upon those who use these dangerous agencies carrying such great possibilities of harm." 147 La. at 367-68, 84 So. at 905. (Emphasis added).
See also Duffy v. Hickey, 151 La. 274, 91 So. 733 (1922); Prine v. Continental Southern Lines, 71 So.2d 716 (La.App. 2d Cir. 1954); Norwood v. Bahm, 14 La.App. 261, 129 So. 183 (1st Cir. 1930). And as the First Circuit stated in Woodard v. Burkes, 135 So.2d 333, 336-37 (La.App. 1st Cir. 1961):
"It is logical that the motorist, as against the pedestrian, bears the greater burden of careful lookout and extreme caution at locations provided for the passage of pedestrians; for it is the motorist who has the power, because of the dangerous instrument which he controls, to reduce the status of a pedestrian to that of a statistic in a split second. The pedestrian poses no such threat."
The right of way of the pedestrian in a crosswalk is further provided by statute.[3]
The courts of this State have often appeared to recognize a distinction between last clear chance cases involving a motor vehicle and a pedestrian from those involving *405 two motor vehicles. In many cases a pedestrian has been permitted to recover, even though he might have had the last opportunity to avoid the accident by hopping out of the path of the oncoming vehicle in the nick of time.[4] Perhaps these courts had in mind the fact that in motor vehicle-pedestrian cases there is lacking a "mutuality of risks."[5] That is, the operator of a dangerous instrumentality, such as a motor vehicle, creates a great risk of injury to the life and limb of others. Thus he owes a duty to the public to protect it from that danger. The pedestrian, on the other hand, endangers himself only, therefore his duty is owed primarily to himself. The motorist runs small risk of harm, physical or financial, from a pedestrian's negligence.
Since the operator of a motor vehicle is aware that he could meet many emergencies in which pedestrians will not always act prudently and will sometimes be found in perilous situations, he should have the added burden of keeping the roads safe even for those who are negligently caught off their guard. Further, where injury results, the burden should fall on the motorist who, with the exercise of care reasonable under the circumstances, saw or should have seen the impending peril and had, at that moment, the opportunity to avoid it.[6]
Earlier this court, without expressly saying so, signaled an intention to abolish the contributory negligence defense in pedestrian-motorist cases. Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958). In Belshe, a motorist, who failed to keep a proper lookout and if he had done so would have avoided striking a pedestrian, was held liable. The court indicated that even if it were to find the pedestrian contributorily negligent, defendant would still be held liable.[7]
What was implicit in Belshe became explicit in the more recent case of Guilbeau v. Liberty Mutual Ins. Co., 338 So.2d 600 (La. 1976), where we said:
"Under Louisiana jurisprudence, an operator of a vehicle or heavy equipment who observes, or who should by the exercise of reasonable care have observed, a pedestrian in a position of peril of which the latter is apparently unaware, is responsible for injuries caused when his vehicle strikes the pedestrian in his path, despite any contributory negligence on the part of the latter; providing that, after the duty to make such observation arose, the operator could reasonably have avoided the accident.
See: Reeves v. Louisiana and Arkansas Railway Company, 282 So.2d 503 (La. *406 1973); Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); Comment, 27 La.L.Rev. 269 (1967). See also: Leake v. Prudhomme Truck Tank Service, 260 La. 1071, 258 So.2d 358 (1972); Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968)." 338 So.2d at 604. (Emphasis added).
And again, in Pierre v. Landry, 341 So.2d 891 (La.1977), relying on the above quoted language from Guilbeau, this court held liable a motorist who failed to see what he should have seen and struck a pedestrian who was in a position of peril. The court spoke of defendant's "clear chance" without referring to it as his last clear chance, further indicating the court's intention to ignore whether the plaintiff or defendant had the final opportunity to avoid the accident in pedestrian-motorist cases.
Accordingly, we hold that the doctrine of "last clear chance" has no application in absolving a motorist from liability when he negligently strikes a pedestrian. In the city a motorist is obligated to maintain a lookout for pedestrians at crosswalks at all times. If he fails to see a pedestrian in a position of peril when he should have, the motorist is at fault and is responsible. A motorist who could have avoided injury to a pedestrian by the exercise of care which is reasonable under the circumstances is at fault, and is responsible. The motorist cannot escape liability by proving that the pedestrian, admittedly in peril because of his own negligence, could have avoided injury more quickly than the motorist. The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety. Therefore, he should not be able to escape responsibility for injury to the pedestrian by pleading the latter's negligence. And since, in such case, a plaintiff's contributory negligence will not bar his recovery, the last clear chance doctrine, used to avoid the harsh effects of the contributory negligence defense, is not at issue.[8]
It must be noted, however, that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.
In the instant case, Morgan could and should have discovered Baumgartner's peril early enough to have avoided hitting him. From a distance of at least 200 feet, and with an unobstructed view, Morgan should have seen Baumgartner crossing the street in a crosswalk, apparently unaware of the Morgan vehicle's approach. Morgan would then have realized the likelihood that decedent would continue his course of action so as to soon be in a position of peril. His failure to so discover Baumgartner at a time when the former could have avoided the injury by slowing, attempting to gain decedent's attention by honking, or by changing lanes constituted fault and entitled the plaintiffs to recovery despite Baumgartner's later negligence in continuing into Morgan's lane of travel.
Defendants cite several cases in which the plaintiff pedestrian was denied recovery and argue that these cases are controlling. We find three of defendants' cases distinguishable. Ritter v. Southern Farm Bureau Cas. Ins. Co., 321 So.2d 46 (La.App. 3d Cir. 1975), writ refused, 325 So.2d 586 (La.1976); *407 Comeaux v. State Farm Mutual Auto. Ins. Co., 231 So.2d 674 (La.App. 1st Cir. 1970), writ refused, 256 La. 69, 235 So.2d 96 (1970); St. Amant v. Travelers Ins. Co., 233 So.2d 23 (La.App. 4th Cir. 1970). In all of the above cases, the motorist was not negligent since he discovered the pedestrian as soon as it was possible for him to do so, and did all in his power to avoid the collision. We expressly disapprove of Ortego v. State Farm Mutual Auto. Ins. Co., 295 So.2d 593 (3d Cir. 1974), writ refused, 299 So.2d 800 (1974), insofar as it conflicts with this decision. Ortego held that the pedestrian had the ability to get out of the way of defendant's car before it reached him and therefore he, and not the motorist, had the last clear chance.
Plaintiffs contend that the trial court's award of damages was inadequate and should be increased by this court. Plaintiffs were awarded a total of $31,288.17 plus court costs and expert witness fees. This amount included a $15,500 award against State Farm and a $15,788.17 award against Morgan individually. Plaintiffs have not made a clear showing that the trial court abused the great discretion vested in it. See Anderson v. Welding Testing Laboratory, 304 So.2d 351 (La. 1974); Bitoun v. Landry, 302 So.2d 278 (La. 1974); Fox v. State Farm Mutual Auto. Ins. Co., 288 So.2d 42 (La.1974). Therefore, we will not modify the award.
For the reasons assigned, the judgment of the Court of Appeal is reversed and the trial court judgment is reinstated; costs of appeal to be borne by defendants.
SANDERS, C. J., dissents and will assign written reasons.
SUMMERS and MARCUS, JJ., concur.
SANDERS, Chief Justice (dissenting).
As I understand the majority opinion, it abolishes the defense of contributory negligence in suits by pedestrians against motorists for injuries. Thus, the decision represents major surgery upon the law of Louisiana.
As support for the decision, the majority cites Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958), opining that the decision signaled an intention to abolish contributory negligence in such cases. My examination of this 1958 decision discloses that the doctrine of last clear chance was applied.
The majority also relies upon the "humanitarian doctrine" of Missouri. Under that doctrine, an automobile is treated as a dangerous instrumentality, and the operator is charged with knowledge of a pedestrian's peril whether he actually saw it or not. The majority approves the doctrine "in its application to pedestrian-motorist cases." See fn. 6.
The "humanitarian doctrine" has been widely criticized as an "obvious fiction." No other state has adopted it.
In commenting upon the doctrine, Dean William L. Prosser states:
"It appears to have begun as a distinction between a defendant operating a dangerous machine, such as a railroad train or an automobile, and a plaintiff who was not, and to have become transformed instead into a doctrine favoring the plaintiff where both parties were equally, and similarly, at fault. Unquestionably it represents an attempt to stress the greater importance of human safety over the convenience and financial interests of defendants; but its application has been marked by such great confusion, and so many appeals, that no other court has been tempted to follow the Missouri cases." W. L. Prosser, Law of Torts, 4th ed. 1971, p. 432.
It is difficult for me to understand the validity of a holding that an automobile driver has a higher duty of care to protect a pedestrian than a pedestrian has to protect himself. In any event, if there is to be a major revision of the law, it should be based upon a careful study of the entire field of delictual responsibility followed by legislative action. The approach in the present case is not in the public interest.
For the reasons assigned, I respectfully dissent.

*408 On Motion For Rehearing
PER CURIAM.
In our original opinion we reversed the judgment of the Court of Appeal in favor of defendants and reinstated a trial court judgment in favor of plaintiffs.
State Farm Mutual Automobile Insurance Company has applied for rehearing. That application is denied. The applicant does however point out an error in the judgment of the district court which by our opinion we reinstated. State Farm's policy covering William N. Morgan contained liability insurance with limits of $15,000 and medical payments coverage in the sum of $500 per person. The trial judge awarded plaintiff $31,288.17 plus court costs and expert witness fees, $15,500 of which was awarded against Morgan and the insuror State Farm.
Applicant points out that coverage C, medical payments, part II of the policy, is by its terms not made available to a claimant such as the pedestrian deceased in this case for, pertinently, he was not "occupying" the owned automobile. For this reason we amend our original decree by reinstating the judgment of the trial court in all particulars except that the award against State Farm is and shall be limited to $15,000.
We reverse to plaintiffs-relators the right to apply for further rehearing within the legal delay, the application to be limited to issues pertaining to the amendment herein of our original decision.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., would grant a rehearing.
NOTES
[1] The doctrine arose out of a mid-nineteenth century English case. Davies v. Mann, 10 M. and W. 546 (Court of Exchequer 1842). It was first recognized in Louisiana in 1894. McGuire v. Vicksburg, S. & P. R. Co., 46 La.Ann. 1543, 16 So. 457 (1894).
[2] See Comment, "The Last Clear Chance Doctrine in LouisianaAn Analysis and Critique", 27 La.L.Rev. 269, 276-83 (1967), for a more detailed history of the doctrine's development in Louisiana.
[3] R.S. 32:212(A) provides:

"When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross-walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching closely from the opposite half of the roadway as to be in danger."
See also Ordinances of the City of New Orleans, § 38-176. Compare R.S. 32:213(A) which provides:
"Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersetion shall yield the right of way to all vehicles upon the roadway."
See also Ordinances of the City of New Orleans, §§ 37-179, 180.
Defendants argue that R.S. 32:212(B) applies and would bar the plaintiffs' recovery in the instant case. It reads:
"No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."
When Baumgartner left the curb of Canal Boulevard Morgan was more than 200 feet away. Baumgartner had already crossed 25 feet of the 28 foot roadway when struck. Had Baumgartner been aware of Morgan's approach he could reasonably have assumed that Morgan would have slowed and yielded the right of way upon seeing Baumgartner crossing within the crosswalk. Had Morgan seen Baumgartner crossing when he should have seen him he would have noticed Baumgartner's obvious intention of proceeding into Morgan's path. In any event, while Baumgartner did have the right of way he was negligent in continuing into Morgan's path at a time when Morgan was no longer able to stop. This, however, as expressed more fully within, does not bar the plaintiffs' recovery.
[4] See, e. g., Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958); Taylor v. Kendall, 162 So.2d 156 (La.App. 3d Cir. 1964); Ingram v. McCorkle, 121 So.2d 303 (La.App. 1st Cir. 1960); Deck v. Page, 77 So.2d 209 (Orl.La.App.1955); Prine v. Continental Southern Lines, 71 So.2d 716 (La.App. 2d Cir. 1954); Moore v. NOLA Cabs, 70 So.2d 404 (Orl.La.App.1954); Breaux v. Barichnivich, 49 So.2d 651 (La.App. 1st Cir. 1950). Indeed these decisions even appeared to ignore the idea of last opportunity.
[5] See Comment, supra note 1, at 275-76, exploring this concept. See also 2 Harper and James, The Law of Torts 1256 (1956); Green, "The Duty Problem in Negligence Cases: II," 29 Colum.L.Rev. 255, 278 (1929); Green, "Contributory Negligence and Proximate Cause," 6 N.C.L.Rev. 3, 31-32 (1927).
[6] A similar theory has been employed in Missouri in what is called the "humanitarian doctrine." By that doctrine the last clear chance rule was extended by charging the operator of a dangerous instrumentality with knowledge of a pedestrian's peril, whether he actually saw it or should have seen it. Thus, the motorist must exercise the highest degree of care rather than ordinary care, as is the usual case. See Gaines, "The Humanitarian Doctrine in Missouri," 20 St. Louis L.Rev. 113 (1935). The doctrine, in its original conception, represented an attempt to stress the greater importance of human safety over the convenience and financial interest of defendants. It has since been extended beyond its primary intention to encompass collisions between two automobiles. Prosser, Handbook of the Law of Torts 431-32 (1971). We approve of the doctrine in its application to pedestrian-motorist cases.
[7] Professor Wex S. Malone, in commenting on this case, stated:

". . . The decision suggests to this writer that in pedestrian cases, at least, we have placed the contributory negligence of the pedestrian on the shelf whenever the alleged carelessness of the motorist is his failure to make a reasonable adjustment to the emergency situation before him. . . ." 19 La.L.Rev. 334, 340 (1959).
[8] Although we find the last clear chance doctrine inapplicable to the instant case we take this opportunity to express our disapproval of a concept first introduced into Louisiana jurisprudence by this court in Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4 (1952). Relying on the authority of American Jurisprudence and quoting from it, we stated that the doctrine of last clear chance is a "two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff." 60 So.2d at 8. Since the last clear chance doctrine was originally intended as an escape from the effects of contributory negligence on the part of plaintiff, it is doubtful that last clear chance was intended to be a weapon in the hands of defendant. In any event, the concept of last chance should not be taken literally where a mutuality of risks is lacking.