432 So.2d 941 (1983)
John BAYS, et al.
v.
Charles J. LEE, et al.
No. CA-0356.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1983.
Robert M. Braiwick, Jr., New Orleans, for plaintiffs-appellees.
Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Nick F. Noriea, Jr., New Orleans, for defendants-appellants.
Before SCHOTT, KLEES and WARD, JJ.
KLEES, Judge.
This is an appeal from a judgment awarding damages to plaintiff, individually and on behalf of his minor son, for personal injuries sustained by the son, a pedestrian, when struck by defendant's vehicle.
The issues on appeal are:
*942 1) Did the trial court err in concluding that defendant Alphonse Fabio was negligent in failing to maintain a lookout?
2) Did the trial court err in concluding that a pedestrian cannot be guilty of contributory negligence under the Louisiana Comparative Negligence Law, LSA-C.C. art. 2323?
As to each of these issues, we conclude that the trial court was correct and accordingly affirm.

FACTS
On the evening of December 2, 1980, just prior to the accident, Alphonse Fabio was driving a taxi cab owned by Charles J. Lee on North Claiborne Avenue heading west toward Canal Street. At the intersection of North Claiborne Avenue and Esplanade Avenue, Fabio stopped at the traffic signal. When the light changed to green, he proceeded across the intersection, crossing the two lake bound lanes of traffic on Esplanade, the neutral ground, and the two river bound lanes.
Shawn Bays, 13 years of age, and his two companions were walking toward City Park lake bound on the sidewalk adjacent to the river bound lane of Esplanade Avenue. As they approached the east bound lanes of Claiborne Avenue, the signal light was green. After crossing the east bound lane of Claiborne Avenue, Shawn Bays started jogging ahead of his companions on the sidewalk on the neutral ground underneath the raised portion of the Interstate 10. As he crossed the west-bound lanes of Claiborne Avenue, one of his companions saw the taxi driven by Fabio, and tried to warn plaintiff by calling to him. Shawn Bays started running diagonally away from the taxi, but was struck with the taxi's right front fender 3'-5' short of the curb on the City Park side of Claiborne Avenue. From the accident, he received injuries to his forehead, chin, nose and right thigh.
John Bays, individually and on behalf of his minor son, Shawn, filed suit against Alphonse Fabio, the taxi driver, and Charles J. Lee, the owner of White Fleet Cabs. After a trial on the merits, judgment was rendered in favor of plaintiff and against defendants in the sum of $5,804.75.
Appellants argue that the trial court erred in concluding that Fabio was negligent in failing to maintain a proper lookout. In his Reasons for Judgment, the trial judge determined that the cab was going between 15-20 miles per hour at impact, that the cab driver did not maintain a proper lookout, and that he failed to see a pedestrian in a crosswalk. He further concluded that the driver could have seen plaintiff because at the time of the accident the intersection was well lighted, there were no obstructions that would have prevented the driver from seeing the boy, and the weather was clear.
The operator of a motor vehicle is under a duty to maintain a proper lookout and to see those things he should have seen with the exercise of reasonable care. Parker v. Continental Insurance Company, 341 So.2d 593 (La.App. 2nd Cir.1977).
Motorists approaching a pedestrian crosswalk must use more than ordinary care to see what is ahead, they must expect that people may be crossing and be prepared for that possibility, Breen v. Eisworth-Talbert, Incorporated, 407 So.2d 77 (La.App. 4th Cir. 1981).
The motorist's standard of care is even greater in instances where the pedestrian is a child and he who sees or should see the presence of children near the road has a corresponding duty to anticipate a sudden, foolish act by any one of them. Young v. Wayde, 383 So.2d 1283 (La.App. 1st Cir. 1980).
Plaintiff crossed the cab driver's view from left to right and was struck with the right front fender of the cab within 3-5 feet from the curb. Defendant testified that he did not see the plaintiff until the instant of impact when he stopped almost immediately. Nonetheless the facts show that the plaintiff had crossed almost the entire width of the street before being struck by the cab. It was clearly the burden of defendant to see plaintiff as he *943 entered Claiborne Avenue from the driver's left and crossed in front of his vehicle.
Defendant was driving at a slow enough rate that had he seen Shawn Bays enter the pedestrian walkway he could have stopped as suddenly as he stopped after striking him.
Thus we conclude that the trial court was correct in finding that defendant failed to keep a proper lookout.
Appellant also argues that the trial court erred in holding that a pedestrian cannot be guilty of contributory negligence under the Louisiana Comparative Negligence Law, LSA-C.C. art. 2323.
In his Reasons for Judgment, the trial court stated:
"This case falls squarely within Baumgartner 356 So.2d 400, and Young v. Wayde, 383 So.2d 1283. The date of the accident was December 2, 1980 after the comparative negligence law went into effect. One issue here is: Can a pedestrian in a crosswalk, at an intersection, struck by a motor vehicle be held to be comparatively negligent? The Court concludes that according to the rationale of the two above cited cases (Baumgartner and Young) such a pedestrian cannot be guilty of contributory negligence. Under the comparative negligence law the question is: `How much of the Plaintiff's negligence caused this accident?' Put another way, the question is: `How much contributory negligence on the plaintiff's part went into causing this accident?' Under the Baumgartner and Young cases, the answer is `Zero'; he cannot be considered as having contributed any negligence in causing this accident."
In Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978), a pedestrian was killed when struck by a vehicle while crossing the street, at a pedestrian crosswalk, and his widow and children brought suit for damages against the motorist's insurer. In the opinion, the court discussed the higher standard of care imposed upon the motorist than upon the pedestrian:
"In the city a motorist is obligated to maintain a lookout for pedestrians at crosswalks at all times. If he fails to see a pedestrian in a position of peril when he should have, the motorist is at fault and is responsible. A motorist who could have avoided injury to a pedestrian by the exercise of care which is reasonable under the circumstances is at fault, and is responsible. The motorist cannot escape liability by proving that the pedestrian, admittedly in peril because of his own negligence, could have avoided injury more quickly than the motorist. The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety. Therefore, he should not be able to escape responsibility for injury to the pedestrian by pleading the latter's negligence."
The duty/risk analysis was used in Baumgartner to conclude that the defendant had a duty to protect the pedestrian against his own carelessness.
The effective date of the amendment to LSA-CC art. 2323 providing for comparative negligence in Louisiana was August 1, 1980. LSA-CC art. 2323 as amended, provides:
Art. 2323. Computation of damages
Art. 2323. When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
Both Baumgartner, supra, and Young, supra, were decided prior to this date, while the matter presently before this court involves *944 an accident that occurred on December 2, 1980, subsequent to the effective date of the amendment.
It is argued by defendant that Baumgartner is a culmination of years of jurisprudence that effectively eliminated the harsh effects of pedestrian contributory negligence in automobile-pedestrian accidents.
He contends that since the amendment to LSA-C.C. art. 2323 replaces the rule of contributory negligence with a theory of comparative negligence, such legal exceptions are no longer required to avoid the unfair results produced by a strict application of the concept of contributory negligence in these situations.
We do not agree with defendant's argument.
A careful examination of the wording of the statute is helpful in our conclusion. The provision begins: "When contributory negligence is applicable to a claim for damages, its effect shall be as follows ..." (emphasis added). The rule in Baumgartner abolishes the defense of contributory negligence in a suit by pedestrians against motorists for injuries. Young v. Wayde, supra. Thus it seems in automobile-pedestrian cases, where contributory negligence is not a viable defense, the theory of comparative negligence would not apply. (See Johnson, Comparative Negligence and the Duty/Risk Analysis, 40 La.L.Rev. 319 (1980), at 338:
"Nothing in the new comparative negligence statute (Act 431 of 1979) states, or even indicates, that the duty/risk analysis cannot continue to be employed in the fashion described in the foregoing pages. In fact, the introductory clause to the basic comparative negligence provision reads: `When contributory negligence is applicable to a claim for damages, its effect shall be as follows: ...' Nowhere does the Act answer the question of when contributory negligence is applicable to a claim for damages. Based upon the previous discussion, we can at least say when it is not applicable:
(a) contributory negligence is not applicable when defendant is negligent and his duty extends to the protection of plaintiff against his own carelessness. Such cases correspond to category (a) previously discussed.
(b) contributory negligence is not applicable when defendant has no duty to protect plaintiff. Some such cases will be found in category (b) previously discussed.
In each instance, the duty/risk analysis is the proper vehicle by which to determine the issue of applicability of contributory or comparative negligence. This inquiry must be completed, in fact, before the tenets of Act 431 can be used. If defendant is not liable because plaintiff's conduct has created a situation such that defendant could not possibly be expected to protect him against such risks, then Act 431 is inapplicable. No recovery, even at a reduced level, would be just. On the other hand if defendant's duty extends to the protection of persons such as this careless plaintiff, Act 431 is equally without application. Plaintiff should not under those circumstances be expected to suffer a reduction in his recovery. Thus, the sophistication reached at this point with the duty/risk analysis will continue to eliminate those instances in which the absolute-bar rule was most troublesome, and it will also protect defendants against liability where none should attach even at a reduced level..."
Furthermore, the rationale behind the Baumgartner decision is based on the comparison of the seriousness of the potential harm resulting from the negligence of the motorist and that of the pedestrian. This was discussed at 40 La.L.Rev. 319 (1980), at 333.
"... The defendant is a person or entity whose conduct exposes a good number of people to substantial risks of harm. The plaintiff is a person whose conduct exposes only himself to harm. If society had to put a value on these two pieces of conduct (both potentially `negligent'), it no doubt would rate the defendant's conduct as more undesirable than the plaintiff's. *945 At a point at which the imbalance becomes extreme, we may simply say that we will ignore altogether plaintiff's conduct, albeit careless. Such a serious lack of `mutuality of risks' prompts the legal conclusion that defendant must protect the plaintiff against his own carelessness. The duty/risk analysis should continue to assist us in ferreting out such cases and announcing such a conclusion where appropriate ..."
See also: Frain as Tutrix of Beason v. State Farm Ins., 421 So.2d 1169 (La.App. 2nd Cir.1982).
We feel that this concept is of such significant importance to the safety of the public to hold the Baumgartner rule viable, notwithstanding the theory of comparative negligence presently in effect.
The trial court found that the defendant was clearly negligent and we conclude that it did not err in refusing defendants' claim of contributory negligence. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
WARD, J., dissenting.
WARD, Judge, dissenting.
I respectfully dissent.
The majority places much emphasis on the wording of the comparative negligence statute which begins, "[W]hen contributory negligence is applicable to a claim for damages... [the doctrine of comparative negligence will now apply]." The majority reasons that, since Baumgartner abolished the defense of contributory negligence in a suit by a pedestrian against a motorist, contributory negligence is not applicable, and, therefore, comparative negligence is not applicable. This rationale overlooks the defendant's argument that Baumgartner is no longer applicable because the underlying rationale is no longer extant.
Ratio est legis anima; mutata legis ratione mutatur et lex. (Reason is the soul of law; the reason of law being changed the law is also changed.) Baumgartner was an effort to avoid the exceedingly harsh and unjust contributory negligence rule that any negligence on the part of the plaintiff, however slight, barred recovery. This harsh and unjust result was eliminated when the legislature replaced contributory negligence with a comparative negligence doctrine. The Supreme Court in Baumgartner did not say that Baumgartner was free of negligence. The court merely said that it would ignore his otherwise negligent conduct and permit him to recover damages in spite of his carelessness, meaning it would not consider his negligent conduct as contributory negligence that would bar recovery for his injuries.
The majority relies on the analysis found in Johnson, Comparative Negligence and the Duty-Risk Analysis, 40 La.L.Rev. 319 (1980), wherein the assertion is made that contributory negligence may not be found when defendant is negligent and his duty extends to the protection of plaintiff against his own carelessness. Referring to the duty of the motorist in comparison to that of the pedestrian, the author states that "[a]t a point at which the imbalance [of the separate duties] becomes extreme, we may simply say that we ignore altogether plaintiff's conduct, albeit careless. Such a serious lack of `mutuality of risk' prompts the legal conclusion that defendant must protect the plaintiff against his own carelessness." The author then says, and the majority quotes, "[t]he duty-risk analysis should continue to assist us in ferreting out such cases ...."
Although the majority quotes these assertions with approval, the majority overlooks the flaw in such an approach; one cannot apply a true duty-risk analysis and yet "ignore altogether plaintiff's conduct, albeit careless." To say that Baumgartner is consistent with a duty-risk analysis is to say that a motorist has a duty to protect a pedestrian from his own carelessness, but a pedestrian has no duty to protect himself by not acting carelessly. The majority states, "[w]e feel that this concept is of such importance to the safety of the public to hold the Baumgartner rule viable ...." I do not believe it to be important to the safety of the public for pedestrians to be excused *946 from a duty not to act carelessly. The safety of the public demands that both motorists and pedestrians share the responsibility to avoid accident or injury, and it is not inconsistent with duty-risk analysis for each of the parties to owe a duty.
I concede that a motorist has a greater duty to protect the pedestrian because the motorist is engaging in conduct that presents a grave risk of physical harm to the pedestrian, while the pedestrian's conduct does not present such a serious risk to the motorist. Even so, duty-risk analysis does not determine which of the parties is negligent merely by comparing the magnitude of the duties of each party.
A true duty-risk analysis involves an examination of the conduct of each party in light of any duty they may owe to themselves or others, no matter how great or small that duty may be. I do not believe that the duty of a pedestrian to look out for his own safety is so miniscule as to be ignored. For this reason, I disagree with the conclusion that "the imbalance [of the duties] becomes extreme [so that] we may simply ignore altogether plaintiff's conduct."
Duty-risk analysis is more encompassing than a comparison of the magnitude of the separate duties of each party. The risk of harm presented by a motorist's conduct is a significant consideration in duty-risk analysis, but it is not the only one. The ease of avoidance of the accident or injury is among the several other considerations within the broad scope of a duty-risk analysis that should be applicable to pedestrians as well as motorists.
Nor do I believe that the Legislature intended comparative negligence to be inapplicable when the duty of the defendant is greater than that of the plaintiff. It is inconsistent with any theory of comparative negligence to ignore the negligence of one of the parties. The existence or absence of a duty, and whether there was a breach of that duty, must be considered in determining whether each party is negligent. Once this determination is made, comparative negligence considers the magnitude of the duty, and the gravity of its breach in the appointment of damages. "[T]he amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributed to the person suffering the injury, death or loss." Civil Code Art. 2323.
For the above reasons, I would reverse the judgment of the trial court in part and remand for a determination of whether the plaintiff-pedestrian's conduct amounts to negligence under a duty-risk analysis, and if it does, then the damages should be reduced by a commensurate amount.