CULPEPPER, Judge.
This is a suit for damages for personal injuries. The plaintiff, Dofflemyer, was a pedestrian. He was struck by an automobile driven by the defendant, Gary D. Gil-ley. Also named as defendants are (1) Frederick Moore, Sr., father of Frederick R. Moore, Jr., who owned the car and was a passenger in it at the time of the accident, (2) Government Employees Insurance Company, the homeowner’s insurer of Frederick Moore, Sr., and (3) American Indemnity Company, liability insurer of the vehicle. A jury found the plaintiff assumed the risk of *441 the accident. From a judgment dismissing his suit, plaintiff appeals.
The issues on appeal are: (1) Did the trial judge err in charging the jury that plaintiff’s recovery could be barred under the law of assumption of the risk? (2) Was the jury manifestly erroneous in finding as a fact that plaintiff assumed the risk?
The facts are that at about 4:00 P.M. on June 26, 1976 a group of approximately 30 persons, ranging in age from 15 years to the mid-thirties, were gathered in one of the parking areas at the Civic Center in Lake Charles, Louisiana. They were on the south side of Bord dulac Drive, a four-lane road, with two lanes for east bound traffic and two lanes for west bound. This thoroughfare is located south of the Civic Center building. The crowd was in a parking area located south of the road. The plaintiff, who was about 44 years of age at the time of the accident, was in the crowd with several of his young friends. He testified he had gone there to deliver a gift to Michelle Holt, about 16 years of age, who had been out of town.
After arriving at the Civic Center, plaintiff had asked Phyllis and Kathy Benoit, two of his young friends, to drive and pick up something for them to eat. When the girls returned, the vehicle driven by Gilley pulled in behind them, and the girls said that they had been harassed by Gilley and young Moore. Plaintiff approached the vehicle and told Gilley and Moore to leave the girls alone. Gilley and plaintiff recognized each other from having served time in the parish jail together. After a brief exchange of words between plaintiff and Gil-ley and Moore, the car driven by Gilley “peeled” out. Plaintiff says he had to step back to avoid being hit.
Gilley then proceeded to drive the car back and forth up and down the road near the crowd five or six times, attracting everyone’s attention by driving at an excessive speed and in a reckless manner. On one of these passes, plaintiff yelled for Gilley to stop. Gilley did stop near the curb, but he took off again when plaintiff walked toward the car. Plaintiff testified that on another of the passes, Gilley almost hit several children when the car “fishtailed” as it came out of a curve. The crowd became upset, and there is testimony that a tire tool was thrown at the Gilley vehicle on one of the passes.
Plaintiff testified he decided to stop Gil-ley on the next pass. There is a conflict between the testimony of plaintiff and his witnesses and the testimony of Gilley as to exactly how the accident occurred. According to plaintiff and his witnesses, he left the parking area on the south side of the road and walked either into the inside west bound lane or the inside east bound lane, where he stopped and started waving his hands at the Gilley vehicle, which was approaching from the west in the outside east bound lane. Plaintiff says he saw Gilley approaching 400 or 500 yards away, and he was going fast. He testified that as Gilley came nearer, Gilley left the outside east bound lane and drove directly toward the place where plaintiff was standing. It is plaintiff’s contention that he attempted to jump to his right (toward the north), but that the left front of the vehicle struck him, flipping his body over the car.
Gilley testified that immediately before the accident he was driving in the inside east bound lane and he saw plaintiff also in the inside east bound lane, very near the double yellow line, waving his hands for Gilley to stop. He says he continued, thinking plaintiff would jump out of the way, but that, instead of jumping to the side, plaintiff jumped up onto the hood of the car. Gilley expressly denied swerving across the yellow line to hit plaintiff and he denied he intended to run into plaintiff.
Immediately after the impact, Gilley continued on and voluntarily turned himself in to the police, who charged him with hit and run driving. He said he was afraid to stop at the scene of the accident, for fear of the angry crowd.
In a special verdict, the jury answered interrogatories numbered as follows:
1. Was Gary D. Gilley guilty of negligence which was a legal cause of the • accident?
*442 Answer: Yes.
2. Was this accident an intentional act on the part of Gary D. Gilley?
Answer: Yes.
4. Was Jennings Jack Dufflemyer guilty of negligence which was a legal cause of the accident?
Answer: No.
5. Did Jennings Jack Dufflemyer assume the risk of injury by voluntarily placing himself in the known position of danger?
Answer: Yes.
We will first consider plaintiff’s argument that the trial judge erred in charging the jury that recovery could be denied the plaintiff on the basis of assumption of the risk. In support of this, argument, plaintiff relies on Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978) and Brantley v. Brown, 277 So.2d 141 (La.1973).
In Baumgartner, a pedestrian, while crossing the street in a cross-walk, was hit by defendant’s automobile. The Court of Appeal held the pedestrian had the last clear chance to avoid the accident by seeing the approaching automobile and not walking into its path. With one justice dissenting and two concurring, the Supreme Court reversed, holding that the last clear chance doctrine is not applicable to pedestrians under these facts, and, therefore, that the pedestrian was not contributorily negligent.
Baumgartner is distinguished from the present case. In that decision, the court does not discuss assumption of the risk or hold that doctrine is not applicable to pedestrians struck by vehicles. Furthermore, Baumgartner is distinguishable on the facts, since there the pedestrian was in a cross-walk and was unaware of the approaching automobile. In the present ease, plaintiff was not in a cross-walk and he saw the vehicle approaching at least 400 yards away.
In Brantley, a 12-year-old boy was riding on the fender of an automobile whose driver was negligent in not yielding the right of way to another vehicle at an intersection. The court held that, notwithstanding the violation of the state statute against out riders, the boy did not assume the risk of negligent driving by either motorist. The rationale of the decision appears to be that an out rider assumes only such risks as are ordinarily incident to his position. Clearly, the case does not support the present plaintiff’s contention that assumption of the risk cannot bar a pedestrian’s recovery.
We find no error by the district judge in charging the jury on the law of assumption of the risk.
The next issue is whether the jury was clearly wrong in its factual finding that plaintiff assumed the risk. In Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1977) the issue was whether a guest passenger assumed the risk of injury by an intoxicated driver. The court stated the law of assumption of the risk as follows:
“As we stated in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), ‘the determination of whether a plaintiff has assumed a risk is made by subjective inquiry . . . .’ See also McInnis v. Fireman’s Fund Ins. Co., 322 So.2d 155 (La.1975); Prosser on Torts, pp. 447-450 (4th ed., 1971).
[7] In order for a plaintiff to assume a risk, he must knowingly and voluntarily encounter the risk which causes his injury. McInnis v. Fireman’s Fund Ins. Co., cited above. ‘Knowledge’ is the mainstay of this defense, and it must be proved by a preponderance of the evidence.
[8] Recovery is denied if the plaintiff knew or should have known of the risk involved. The defendant argues, and the court of appeal also held, that Presten-bach should have known of the driver’s condition, simply since he had spent most of the evening with him.
[9] However, for purposes of a knowing assumption of risk, we impute knowledge to a plaintiff, not because he was in a position to make certain observations, but only when he actually makes those observations and, from them, should reasonably have known that a risk was involved.”
*443 Applying these rules to the present case, if the plaintiff’s version of the facts is true, there was no assumption of the risk. Plaintiff and his witnesses testified he was in a different lane of traffic from that in which Gilley was approaching, and that Gilley swerved into the lane in which plaintiff was standing and deliberately ran over plaintiff. Under these facts, plaintiff made no actual observation from which he should reasonably have known such a risk.
However, if Gilley’s version of the facts is true, then plaintiff did assume the risk. Under this version, plaintiff was standing in the same lane of traffic in which he saw Gilley approaching. He had previously seen Gilley driving back and forth in a careless, reckless and dangerous manner. Thus, plaintiff actually observed the activities which caused the risk. Having actually made these observations, plaintiff should have reasonably known that a risk was involved, i. e., that Gilley might run into him.
The jury found Gilley’s version of the facts to be true. They were not manifestly erroneous nor clearly wrong in reaching this conclusion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). It is true that plaintiff’s testimony is supported to a degree by three witnesses, but none of them were in a good position to see in which lane plaintiff was standing nor in which lane Gilley was approaching. Furthermore, the jury could have reasoned it was improbable that Gilley swerved from his lane of traffic and intentionally drove across the center line to hit the plaintiff. Essentially, it was a question of the credibility of the witnesses. The jury apparently chose to believe Gilley.
Of course, it is difficult to reconcile all of the jury’s answers to the interrogatories. The jury found Gilley negligent, and there is no difficulty in finding that he was negligent in driving in a careless and reckless manner. The jury also found the accident was an intentional act on the part of Gilley. This can reasonably be inferred from Gilley’s own testimony that he intentionally continued to drive toward plaintiff, who was standing in Gilley’s path. But this does not necessarily mean the jury found Gilley intended to hit the plaintiff. Finally, the jury found that plaintiff was not guilty of negligence, although in the next interrogatory the jury found plaintiff assumed the risk by voluntarily placing himself in the known position of danger. Apparently, the jury thought it could not find the plaintiff guilty of both negligence and assumption of the risk. Although there are clear distinctions between contributory negligence and assumption of the risk, there are situations in which the two overlap. See the general discussion in Prosser, Law of Torts, 4th Ed., pages 439-441. Under Gil-ley’s version of the facts in the present case, plaintiff was guilty of both contributory negligence and assumption of the risk. We think the jury should have so found. Of course, under Baumgartner, supra, it may be that even if the jury had found the plaintiff contributorily negligent, this would not be a defense. Nevertheless, we have in the present case a clear finding by the jury that the plaintiff assumed the risk, and we conclude this finding of fact is not clearly wrong.
An answer to the appeal was filed by American Indemnity Company and Frederick R. Moore, Sr., as well as by Government Employees Insurance Company, complaining that the jury erred in not finding the plaintiff guilty of contributory negligence. As stated above, we agree that the jury did err in not finding the plaintiff guilty of contributory negligence.
The defendant Gilley has also answered the appeal, complaining of the jury finding that this accident was an intentional act on the part of Gilley, as well as the finding that plaintiff was not guilty of contributory negligence. As stated above, we find the jury did err in not finding plaintiff guilty of contributory negligence. As to whether Gilley acted intentionally, the answer to this question depends on what act of Gilley is at issue. As stated above, under Gilley’s version of the facts he intended to continue driving toward plaintiff, but he did not intend to hit plaintiff. This is our appreciation of the jury’s finding.
*444 For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.