386 So.2d 165 (1980)
Joseph FONTENOT et al., Plaintiffs-Appellees,
v.
AMERICAN FIDELITY FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 7692.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1980.
*166 Franklin, Moore & Walsh, Ray C. Dawson, Baton Rouge, for defendant-appellant.
Tate, Tate & Tate, Paul C. Tate, Mamou, plaintiff-appellee.
Before DOMENGEAUX, FORET and CUTRER, JJ.
CUTRER, Judge.
This is a tort suit arising out of an automobile-bicycle collision which occurred on August 2, 1977, in Eunice, Louisiana. Joseph Fontenot, as father and administrator of the estate of his minor son, Charles Ray Fontenot, sued American Fidelity Fire Insurance Company (American). American answered, resisting coverage, asserting that the automobile involved in the accident was no longer owned by their named insured. Defendant further denied any negligence on the part of the driver of the automobile, Rhonda Pomier, and alternatively, that plaintiff's son was contributorily negligent. The trial court held in favor of plaintiff and against defendant on all issues.
Defendant assigns as error:
(1) That the trial court erroneously concluded that the defendant insured the 1968 Ford Mustang automobile involved in the accident;
(2) That, assuming arguendo, that American provided coverage for the accident involved herein, the court erroneously concluded that there was negligence on the part of the driver of the insured vehicle; alternatively, the court erred in not finding that the plaintiff's son was contributorily negligent;
(3) That, assuming arguendo, if this court finds that there was negligence on the part of the driver of the vehicle and no contributory negligence on the part of the plaintiff's son, the trial court's award was excessive; and
(4) That the trial court erred in granting judgment on an incomplete record.
The record shows that the automobile involved in the accident was being driven by Rhonda Pomier. The automobile, a 1968 Ford Mustang, was purchased by Miss Pomier with her own funds which she had received by inheritance. At the time of the purchase, she was a minor, sixteen years of age, and living with her sister, Elaine Manuel, who had qualified as her tutrix. Rhonda purchased the automobile with the consent of her tutrix. The automobile was titled in Elaine's name on the advice of the dealer that it could not be titled to the minor's name. Elaine obtained insurance from Buford Perron Insurance Agency of Mamou to cover the automobile. However, Rhonda paid the insurance premium with her own funds. Some time before the accident, Rhonda went to live with her brother, Randall Pomier, and, in connection with this move, Elaine signed the title papers of the automobile to Randall. However, the insurance policy remained in Elaine's name up through the time of the accident. The evidence is in dispute as to whether or not Perron Insurance Agency was asked to change the policy from Elaine to Randall. However, we see no great significance in this connection, as will be more fully discussed below.
The record shows further that Buford Perron of Perron Insurance Agency knew that although the automobile was titled to Elaine Manuel, it would be driven primarily by Rhonda, the placing of the certificate of *167 title in the name of Elaine Manuel being merely for convenience, and because of the fact that Rhonda was a minor. As stated above, the premiums on the insurance policy were paid by Rhonda and accepted by Perron. The vehicle was maintained and used exclusively by Rhonda Pomier, another fact which was well known to Perron Insurance Agency.
It is the opinion of this court that although the title to the automobile at the time of the accident was in the name of Randall Pomier, the owner was Rhonda Pomier. A Louisiana certificate of title is only an indicia of ownership. Rhonda used and controlled the vehicle to the exclusion of all other persons; she had immediate dominion over it, and had more than a beneficiary right in it. See LSA-C.C. articles 488 and 489.[1] Agent Perron knew that the risk being insured was that of Rhonda's operation of this vehicle. The insuring of this risk was no more or less burdensome on American whether title was in the name of Mrs. Manuel or Randall Pomier, or Rhonda herself.
In Bonadona v. Guccione, 362 So.2d 740 (La. 1978), the Supreme Court dealt with a coverage issue not unlike the one presented here. In that case, an insurance policy covered liability for injuries arising out of operation of a motel. The named insureds were the original owners-operators. The motel was then leased to tenants-operators; the policy was renewed, with the tenants paying the premium. No formal change or addition to the named insured was made; however, the policy covered the same premise and risks. A motel guest was injured during the tenant's operation of the motel and he sued to recover damages thereby sustained. The insurer denied coverage, urging that it was not liable since it insured solely the owners of the motel and not the lessee against liability arising out of the operation of the motel.
The court of appeal reversed the trial court and held that plaintiff had not proved a reformation of the policy by clear and convincing evidence.
The Supreme Court, in reversing the court of appeal and reinstating the judgment of the trial court stated, at page 743:
"Where an insurance policy is issued to cover certain risks of a named insured, if these risks are transferred to or assumed by another person who continues to pay the insurance premiums for their coverage, the insurer is bound by the knowledge of its agent and is estopped to deny its liability or the reformation of its policy to cover such risks incurred by the other person, when it has accepted the payment of premiums from or for him knowing of the change or addition of insured expressly or impliedly intended (even though there has been no formal endorsement reflecting the change or addition of insured)at least in the absence of proof that the risks thus insured would be different in nature or substantially greater than those initially covered by the policy." (Citations omitted.)
Although the Bonadona case is factually distinguishable from the case at bar, its ration decidendi is nevertheless applicable here. The agent knew the risk being insured was that of the operation of a vehicle by Rhonda Pomier. The defendant insurer introduced no evidence disputing this, nor was any evidence introduced showing that the representations made to Agent Perron by the named insured and Rhonda Pomier *168 were false and made with the intent to deceive or that the representations materially affected either the acceptance of the risk or hazard assumed by the insurer. See LSA-R.S. 22:619.[2]
Where an insurer is held liable in fact for the identical risk for which it issued the policy and that insurer has acquiesced in an arrangement whereby the risk for which the policy was issued will be the same no matter who the named insured is, a subsequent transfer of title[3] to another without increasing the risk to the insurer is consented to impliedly by the continued acceptance of premiums from the premium payer.
Here, the situation created by the transfer of title created no greater risk for the insurer. To hold otherwise would allow a windfall to an insurer which collects premiums from one who reasonably believes he is provided coverage but is denied the expected coverage.
Our courts have recognized the rule that a written contract of insurance can be reformed to conform to the original intention of the parties thereto, whether for mutual error or for fraudulent, negligent, or mistaken conduct on the part of the agent issuing the policy. If an agent has knowledge of the true intention of the policyholder as to the coverage sought, the insurer is bound by the agent's knowledge, and the policy thus issued will be reformed to conform to the original intention. Hebert v. Breaux, 285 So.2d 829 (La.App. 1st Cir. 1973); Anderson v. Sciambra, 310 So.2d 128 (La.App. 4th Cir. 1975), writ denied, 313 So.2d 835 (La. 1975); Urania Lumber Co. v. Insurance Company of North America, 177 So.2d 640 (La.App. 3rd Cir. 1965).
We conclude that Elaine Manuel, the sister of Rhonda Pomier, was acting in the interest of her younger sister in procuring the policy herein discussed and that she intended to obtain appropriate insurance against Rhonda Pomier's liability, and that the insurer intended to insure the risk arising out of the operation of the vehicle by Rhonda Pomier. Transfer of title to Rhonda's brother, Randall, during the policy period did not affect coverage of Rhonda Pomier.

NEGLIGENCE OF RHONDA POMIER
We now address the issue of the negligence vel non of Rhonda Pomier. Rhonda Pomier was traveling west on Laurel Avenue (U.S. Highway 190) through Eunice. She was proceeding in the right lane, intending to make a right turn into a service station situated on the north side of Laurel Avenue. Her sister, Elaine, had already arrived at the station and was waiting for Rhonda. Plaintiff's son was traveling east on a sidewalk which traversed the southern edge of the service station lot and the northern edge of Laurel Avenue. A second vehicle was emerging from the station at the time of the accident. When Miss Pomier turned into the station lot, her vehicle struck the plaintiff's son and the bicycle he was riding.
Defendant alleges that its insured could not see the boy soon enough to stop because the emerging vehicle blocked her vision. The station has two exit/entrances on its southern side. Miss Pomier testified that *169 the vehicle was exiting through the same passageway that she was entering, i.e., the eastern-most passageway. This would mean that the exiting vehicle would have been approximately two to three feet from the Pomier vehicle at the time the plaintiff's son appeared from behind said vehicle. Contrariwise, Elaine Manuel testified that the exiting vehicle was leaving through the western-most exit, which would have given Miss Pomier a considerably longer time to recognize and react to the situation. Thus, there is a conflict in the testimony as to which exit the second vehicle was emerging from at the time of the accident. Also, defendant alleges that the bicycle struck the automobile with its front wheel and that the vehicle did not, as plaintiff would have the court believe, strike the rear part or all of the bicycle. Be that as it may, our review of the record reveals no finding of fact by the trial court which can be construed as manifestly erroneous.[4]

CONTRIBUTORY NEGLIGENCE
Defendant argues that the trial court erred in finding Rhonda Pomier negligent and that plaintiff's son was not contributorily negligent.
Charles Fontenot testified that he was riding his bicycle along the sidewalk which traversed the outer portion of the two filling station entrances. As he was so proceeding, he saw the Pomier vehicle proceeding toward him as he was traversing the entrance. He stated that he attempted to avoid the accident by speeding up but this was to no avail. The vehicle suddenly struck him, causing injuries.
As heretofore reiterated, Rhonda's contention that her view of the bicycle was obstructed by a car leaving the station in the same entrance she was in is without merit. The facts do not support such a contention. Rhonda had a clear view of the entrance and the bicycle proceeding across the entrance. Rhonda was not keeping a proper lookout as she crossed the sidewalk entering the station. The sole cause of the accident was the negligence of Rhonda Pomier. Charles Fontenot was free of contributory negligence.

QUANTUM
Defendant argues that the amount of damages awarded to plaintiff was excessive.
Immediately after the accident, plaintiff's son was taken by ambulance to Moosa Memorial Hospital in Eunice. He was treated there by Dr. B. N. Heinen. Dr. Heinen's diagnosis revealed that Fontenot had a fractured tibial tubercle (posterior), abrasions of the right knee, and a fractured acetabulum (cup-shaped socket in the hip bone). He was x-rayed, given some medication and ultrasonic treatment, and placed in a brace. The knee joint was aspirated on August 5, 1977. A subsequent examination on August 25, 1977 showed that Fontenot was improving at a satisfactory rate and had full range and motion in his leg and hip with some mild pain in the right hip. He was still receiving ultrasonic treatment. Prognosis was for a full recovery. Fontenot was seen again on September 2, 1977. He was ambulating well and had no complaints of pain. Full range in motion was present in the right knee, leg and hip. Fontenot was released from treatment with no permanent disability and could return to his regular activities.
In reviewing the award of damages, we are guided by LSA-C.C. art. 1934(3), which states, in pertinent part:
"* * *

"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract *170 has been broken by the fault, negligence, fraud or bad faith of the debtor."
The Supreme Court's most recent analysis of this article was in Reck v. Stevens, 373 So.2d 498 (La. 1979). In that case, the court accosted anew and recriticized the practice of using a scale or prior awards given for generically analogous injuries, which practice was previously condemned by Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) and Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). Only when there is a clear abuse of the "much" discretion granted to the finder of fact by LSA-C.C. art. 1934(3) in the award of damages may the reviewing court alter the award. A hypothetical scale of hypothetical awards cannot serve as a guide in determining whether or not this trier of fact has abused its discretion in the award to this particular plaintiff under the facts and circumstances peculiar to this case. Reck v. Stevens, supra.
Finding no abuse of discretion of the trial court in awarding $5,000.00 to plaintiff, we affirm the award.

COMPLETENESS OF THE RECORD
Defendant's final assignment of error addresses the question of whether or not the trial judge was correct in rendering judgment on the record before it.
At the trial on the merits, counsel for plaintiff sought to introduce additional medical evidence in the form of a doctor bill. This evidence was not previously stipulated to by counsel for defendant and had not been pre-filed into the record pursuant to the pre-trial order. Counsel for defendant objected to the offering. The court then agreed to allow plaintiff to subpoena the bookkeeper of Dr. Heinen in order that plaintiff may attempt to prove the claim. Likewise, the defendant was given an opportunity to rebut and defend against the additional evidence sought to be admitted.
We note at the outset that this matter is largely within the discretion of the trial judge. Smith v. V. V. Sharpe Co., Inc., 379 So.2d 1216 (La.App. 3rd Cir. 1980).
Supreme Court rule 13:4207.1[5] is authority for the holding open of a note of evidence by a trial court for the taking of additional evidence. This rule provides for a fifteen day period within which parties litigant are to submit additional evidence to the court.
The trial was held on September 6, 1979. Written reasons for judgment were assigned *171 on September 27, 1979, and judgment was signed on October 9, 1979. We think that counsel for defendant had ample time within which to make his defense, and find no error or abuse of discretion on the part of the trial judge in rendering judgment as he did. Smith v. V. V. Sharpe Co., Inc., supra.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of these proceedings are assessed against American Fidelity Fire Insurance Company.
AFFIRMED.
FORET, J., concurs with written reasons.
FORET, Judge, concurring.
I concur in the result arrived at by the majority. However, I cannot agree with the majority on the contributory negligence issue.
Baumgartner v. State Farm Mutual Auto. Ins. Co., 356 So.2d 400 (La.1978) marked the demise of the plea of contributory negligence as a defense to a claim arising out of a pedestrian-automobile collision. In Baumgartner, the Supreme Court adopted the "humanitarian doctrine" and held that a defendant could not avail itself of the plea of contributory negligence against a pedestrian who was struck by an automobile while he was in a marked crosswalk. In so holding, the Court stated:
"... The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety. Therefore, he should not be able to escape responsibility for injury to the pedestrian by pleading the latter's negligence. And since, in such case, a plaintiff's contributory negligence will not bar his recovery, the last clear chance doctrine, used to avoid the harsh effects of the contributory negligence defense, is not at issue."
In the recent case of Widcamp v. State Farm Mutual Automobile Ins. Co., 381 So.2d 937 (La.App. 3 Cir. 1980), this Court applied the Baumgartner rationale to a situation involving an eight-year-old pedestrian who was not in a marked crosswalk when struck by an approaching vehicle. We held Baumgartner applicable to pedestrians not in marked crosswalks, stating:
"We agree with plaintiff that Baumgartner does not appear to be limited to pedestrians at crosswalks. Defendants herein cite the recent case of Osby v. Harris, 375 So.2d 181 (La.App. 2 Cir. 1979) which states that Baumgartner was inapplicable in that case because Baumgartner is applicable only to pedestrian-crosswalk accidents. As stated above, we do not agree that Baumgartner is strictly limited to crosswalk accidents. ..."
Again, in Hryhorchuk v. Smith, 379 So.2d 281 (La.App. 3 Cir. 1979), writs granted, 381 So.2d 1225 (La.1980), we applied Baumgartner to a pedestrian-automobile accident wherein the plaintiff was not in a marked crosswalk.
After a careful study of Baumgartner and the policy and reasons underpinning that decision, I believe that a plea of contributory negligence is not a defense to a bicycle-automobile collision. Bicyclists frequently traverse the same areas pedestrians do and are subject to virtually the same perils of the highway. Bicyclists are equally vulnerable to injuries resulting from collisions with automobiles as are pedestrians.
NOTES
[1] LSA-C.C. art. 488 states:

"Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons."
LSA-C.C. art. 489 states:
"The ownership of a thing is vested in him who has the immediate dominion of it, and not in him who has a mere beneficiary right in it."
Articles 488 through 498 of the Louisiana Civil Code of 1870 were amended by Acts, 1979, #180, § 1, effective January 1, 1980, and their substance is reproduced in Revised Articles 477 through 482. Revised Article 477 is based on Articles 488 and 491 of the Louisiana Civil Code of 1870 and does not change the law. Official Revision Comment "Ownership", Book II, Title II, Chapter 1, LSA-C.C. article 477. Article 489 was suppressed, it being unnecessary and confusing. Exposeé des Motifs, "Ownership", Book II, Title II, Louisiana Civil Code of 1870.
[2] "A. Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." See also Cousin v. Page, 372 So.2d 1231 (La. 1979).
[3] We noted earlier that title is merely an indicia of ownership. In this case title was vested in one other than the owner merely to comply with the statutory requirements dealing with minors, motor vehicles, and for the general convenience of the parties.
[4] The standard of appellate review in this State has been clearly enunciated by our Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), and numerous times thereafter by the courts of appeal. This rule is now an aphorism which may be applied without resort to superfluous citations in support thereof.
[5] "(a) When Submitted. A case or other matter shall be considered as fully submitted for decision to the trial judge and should be decided, immediately upon the conclusion of trial or hearing, and judgment signed expeditiously thereafter.

"In an exceptional case when the record has been left open upon the conclusion of trial or hearing for the filing of testimony by deposition and/or documents, such depositions and/or documents shall be filed within fifteen days and the case or matter shall be considered as fully submitted, and should be decided, immediately after such filing or the lapse of fifteen days, whichever occurs sooner.
"If the court, in an exceptional case, orders post-trial or post-hearing briefs, or orders the transcript prepared, plaintiff shall be allowed a maximum of twenty days within which to file a brief; defendant shall be allowed a maximum of twenty days from the filing or lapse of time for filing plaintiff's brief (whichever occurs sooner) within which to file a brief. If the defendant timely files a brief, plaintiff shall be allowed a maximum of ten days to file a rebuttal brief. When briefs are so ordered, the case or matter shall be considered fully submitted on the day following the day of the latest timely filing of a brief or, at the latest, the day following the last day for filing of briefs. The judge may extend the time for filing a brief for a reasonable period not to exceed the original time granted.
"If a transcript of the evidence, in an exceptional case, is deemed essential and is ordered by the court, it shall be filed within thirty days following the conclusion of trial or hearing. When necessary, for good cause shown, one extension may be granted by the judge not to exceed an additional fifteen days for filing of the transcript.
"(b) Reports. Each judge of a district, juvenile, family, parish, city municipal or traffic court shall report to this court, through the office of Judicial Administrator, on or before the tenth day of each month, all cases which have been fully submitted and under advisement for longer than thirty days, together with an explanation of the reasons for any delay and an expected date of decision.
Added Oct. 14, 1976, effective Jan. 1, 1977."