# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01293-SCT

*CHARLES FAIRLEY, AS CONSERVATOR OF*
*THE ESTATE OF JAMES D. OWENS*

*v.*

*TOTAL TRANSPORTATION OF MISSISSIPPI,*
*LLC, A CORPORATION; AND WILL GATES, AN*
*INDIVIDUAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2016 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| TRIAL COURT ATTORNEYS: | EDWARD BLACKMON, JR. |
| | THOMAS S. MOORE |
| | OBY THOMAS ROGERS |
| | ROBERT L. GIBBS |
| | CHARLES C. WIMBERLY, III |
| | HENRY COOPER ELLENBERG, II |
| | MITCHELL DIAL MONSOUR, JR. |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HENRY COOPER ELLENBERG, II |
| | THOMAS S. MOORE |
| | EDWARD BLACKMON, JR. |
| | OBY THOMAS ROGERS |
| ATTORNEYS FOR APPELLEES: | CHARLES CORBETT WIMBERLY, III |
| | ROBERT L. GIBBS |
| | GUY D. PERRIER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 10/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    James Owens had been experiencing drug-withdrawal symptoms when he wandered off his work shift onto a dark Louisiana highway.  Around this time, Will Gates was driving his employer's truck, which struck Owens.  Gates did not see Owens, and the truck never left its lane of travel. Owens[1] filed a negligence suit in Humphreys County, Mississippi, against Gates and his employer.  The case proceeded to trial, and the jury returned a verdict in favor of Gates and his employer.  After review, we find the evidence supported the jury's verdict that Will Gates had not been negligent.

¶2.    We also find no merit to Owens's claim that the judge wrongly denied his request for a mistrial based on Gates's cousin Abraham Gates, a justice court judge, acting as a jury consultant in his case.  This case was a civil jury trial in *circuit* court, not justice court, and all Owens can show is that Judge Gates sat in the courtroom during trial.  Like the circuit-court judge, we fail to see any grounds for a mistrial.   Had Judge Gates been an attorney, he could have tried the case for the defense.[2]   So his serving as a jury consultant—a role that involved no direct contact or interaction with the jury—was not prohibited.

¶3.    Moreover, the circuit-court judge allowed Owens's counsel to address the issue of Judge Gates's attendance during voir dire.  And the entire venire assured the court that any knowledge of Judge Gates would not impact its ability to be impartial.  So the circuit-court judge did not abuse her discretion when she denied Owens's motion for a mistrial.

---

[1] The actual plaintiff was Owens's conservator, Charles Fairley, who is now the appellant.  But to avoid confusion, this opinion refers to the plaintiff / appellant as "Owens."

[2] As "part-time" judges, justice court judges are allowed to practice law or any other profession or occupation.  *See* Miss. Code of Judicial Conduct Terminology (2018).

¶4.    Therefore, we affirm.

**Background Facts and Procedural History**

**I.    The Accident**

¶5.    On September 23, 2013, Will Gates was driving an eighteen-wheeler for his employer, Total Transportation of Mississippi, LLC. Around 8:25 p.m., he pulled out of the Folgers Distribution Center in St. Tammany Parrish, Louisiana, onto Highway 434 where his truck struck Owens.

¶6.    Owens was a temporary worker at Folgers who had walked off his shift without clocking out. Owens testified he left because he was not feeling well. But he had an admitted history of illegal drug use. And his live-in girlfriend, Aleisha Mills, testified that Owens had left because he was experiencing heroin withdrawal. Owens had called Mills multiple times from work. Mills testified Owens asked her to bring him some heroin so he could make it through his shift that did not end until midnight. When she finally arrived at Folgers with the drugs, Owens had left his shift, exited the Folgers facility, and walked onto the narrow, almost nonexistent shoulder of Highway 434.

¶7.    Gates's truck had only traveled a quarter to a third of a mile from Folgers when it hit Owens. Gates testified that, when he pulled out, no one was on the highway. Gates did not see Owens before impact and figured he must have stepped out in front of him. The accident report admitted into evidence similarly concluded that Owens had stepped into the highway, because Gates's truck never left its lane of travel.

¶8.     Gates was traveling at twenty miles per hour when he struck Owens.  Owens presented an accident reconstructionist who opined that, at that speed with proper headlamps, Gates should have been able to see Owens for several seconds before impact.  Owens's theory was that Gates must have been distracted.  Owens's counsel questioned Gates about his cell phone records, which indicated he had made a call within a minute or so of calling 911 to report hitting Owens.  But Gates insisted he was not on the phone and had not been distracted when the accident occurred.  Instead, he had tried to call a family member before he left the Folgers facility.  And only after she did not answer did he pull out onto Highway 434.

¶9.     According to the accident report, that stretch of Highway 434 was dark.  And Owens was wearing dark clothing.  But several witnesses—including Owens—said he had been wearing a non-reflective, orange mesh work vest.[3]

¶10.    Owens survived but sustained a head injury.  After initial hospitalization, he was transferred to a neurological rehabilitation living center.  Through his conservator Charles Fairley, Owens sued Gates and Total Transportation for negligence,[4] alleging the collision caused permanent injuries, including brain damage.  Though Owens had a poor work history

---

[3] The state trooper who responded to accident said he never saw a vest.  And Gates described to the 911 operator that the man he hit was putting on an orange vest. But Owens's coworker testified Owens was wearing the vest when he walked off his shift—though he described the vest as green with black trim.  And the paramedic who worked on Owens at the scene testified Owens had been wearing an orange vest with yellow stripes on the front.

[4] Indisputably, Gates was acting within the course and scope of his employment at the time of the collision, so Owens sought to hold Total Transportation vicariously liable.

before the accident, he claimed the accident rendered him unable to work. His doctors also testified his injury impeded his ability to fight his drug addiction.

## II. Trial

¶11. While Owens was injured in Louisiana, he decided to file his negligence complaint in Humphreys County, Mississippi, where Gates resided. Trial began in Humphreys County on July 27, 2016.

¶12. Sitting in the courtroom during trial was Gates's cousin, Justice Court Judge Abraham Gates. Defense counsel retained Judge Gates to consult on jury selection. At first, Judge Gates sat at defense counsel's table. But Owens's counsel objected. Because Judge Gates was not an attorney, the trial court directed him to sit outside the well. But the court found no issue with his serving as a jury consultant, since Judge Gates was a part-time judge who was allowed to perform other jobs.

¶13. At this point, voir dire had not been completed. And the trial court decided the best way to handle Owens's counsel's concern about Judge Gates was to give counsel the opportunity, which he took, to ask the venire if Will Gates's relationship to Judge Gates and Judge Gates's presence at trial would impact their impartiality. The potential jurors collectively responded that they either knew or knew of Judge Gates. But they all assured Owens's counsel and the court that they could still be impartial.

¶14. Only after the first day of trial testimony, which included Will Gates's being called adversely, did Owens's counsel move for a mistrial based on Judge Gates's "participation"

5

in the trial. The trial judge denied the motion, finding Judge Gates's introduction to the jury panel as the defendant's cousin and mere attendance at trial did not warrant a mistrial.

¶15. Trial testimony lasted about a week. The jury heard from Gates, Owens, Mills, Owens's coworkers, the first responders and eyewitnesses to the accident, accident reconstructionists, and medical experts. Because the accident occurred in Louisiana, the parties submitted—and the trial court gave—jury instructions based on Louisiana substantive law. Following deliberation, the unanimous jury found Will Gates had not been negligent in the operation of his truck the night he hit Owens. Based on the jury's verdict, the trial court entered a judgment for the defendants. Owens filed a notice of appeal, but his notice was not effective until his Rule 59 motion to alter the judgment or, alternatively, for a new trial was denied almost a year following trial. Miss. R. Civ. P. 59(e), (a); Miss. R. App. P. 4(d).

**Discussion**

¶16. On appeal, Owens takes aim at the jury's verdict. He claims the defense verdict contradicted the evidence and Louisiana law. He further asserts the jury was biased by evidence of Owens's drug use and improperly influenced by Judge Gates. But Owens's claims miss their mark. And what Owens is *not* arguing is almost as important in resolving this appeal as what he *is* arguing. Instead of pinpointing specific trial court rulings that were reversible error, Owens provides several variations on a broad argument that the jury simply got it wrong. But our well-established law "requires [this Court] to give great deference to the jury's verdict and the trial judge's refusal via post-trial motions to set aside the jury

6

verdict or award a new trial." ***Patterson v. Liberty Assocs., L.P.***, 910 So. 2d 1014, 1020 (Miss. 2004). Because Owens fails to show any abuse of discretion in the circuit court's denial of the motion to alter the judgment or a new trial, we affirm the judgment in favor of Gates and Total Transportation.

### I. The Law and the Evidence

¶17. Owens first argues the jury's verdict was contrary to Louisiana substantive law and the overwhelming weight of the evidence.

### A. Louisiana Law

¶18. Importantly, Owens does not argue the circuit court improperly instructed the jury on the law. Both parties agreed Louisiana substantive law would control, because the accident occurred in Louisiana. *But see **Ford v. State Farm Ins. Co.***, 625 So. 2d 792, 794 (Miss. 1993) (citing ***Boardman v. United Servs. Auto. Ass'n***, 470 So. 2d 1024 (Miss. 1985)) (applying the "center of gravity" test—of which the location of the accident is but one factor to consider—to determine whether the substantive law of Mississippi or Louisiana applied). And Owens makes no claim that any of the standard-of-care instructions were erroneously given or erroneously denied based on Louisiana law.

¶19. Still, Owens insists the jury's finding that Gates had not operated his truck negligently contradicted Louisiana law. Owens cites ***Turner v. New Orleans Public Service Inc.***, 476 So. 2d 800, 805 (La. 1985), for the principle that a motorist bears greater responsibility than a pedestrian to prevent a collision between them. But ***Turner*** dealt with how to assess fault when *both* the motorist and pedestrian struck by the vehicle were found to be negligent. In

7

that case, a city bus ran over Musette Turner's foot.[5] Though the trial court awarded her full damages, the Louisiana Supreme Court reduced her award by ten percent to account for her own negligence, which contributed to her injury. *Id.* at 805. "Turner's fault was that she walked almost into the path of an approaching bus, slipped and fell when she tried to save herself." *Id.* However, "Turner's fault was slight" when "[c]ompared to the [bus] driver's fault[.]" *Id.* "The driver failed to see a pedestrian on a collision course with his bus, at an intersection where he knew passengers transferred from one bus to another." *Id.* Further, there was no reason why the driver could not see her. A passenger sitting near the driver saw her. *Id.* at 802. And if the driver had only "seen her in the crosswalk too he could easily have avoided the accident." *Id.* at 805. The Louisiana Supreme Court assessed the driver ninety percent of the fault, concluding: "The greater the risk of harm to others, the greater is the fault." *Id.*

¶20. By contrast, here, the jury found Gates had not been negligent at all. Thus, he did not share any fault for the accident—let alone the lion's share like the bus driver in *Turner*. While Owens argues assessing zero fault to a motorist contradicts Louisiana law, Louisiana does "not impose absolute liability on a driver of an automobile simply when there is a collision between a car and a person." *Aetna Cas. & Sur. Co. v. Nero*, 425 So. 2d 730, 733 (La. 1983). Instead, "[t]he operator of a motor vehicle must . . . be at fault in order to be held liable." *Id.*

---

[5] *Turner* actually was a consolidated appeal of two cases involving two separate motorist-pedestrian accidents. *Turner*, 476 So. 2d at 801. But Owens cites *Turner*'s discussion of the bus wreck only.

¶21.    For example, in ***Johnson v. Safeway Insurance Co.***, 741 So. 2d 32, 34 (La. Ct. App. 1999), the Louisiana Court of Appeals reversed a judgment assessing a motorist fifty percent fault and entered a judgment in his favor.  Significantly, the appellate court recognized the principle that Owens relies on in this appeal—that, while both motorist and pedestrian owe a duty of care, "a far greater duty and responsibility to avoid the accident is placed upon the motorist, who is 'insulated' inside his machine and has the greater chance of avoiding the accident[.]"  ***Id.*** at 33.  Even so, based on the facts, the court held that the pedestrian in ***Johnson*** was the only one who breached her duty of care.  The pedestrian had been walking with two friends "down the middle of an unlit highway with their backs to any traffic in their lane"—leaving "no doubt" she had been negligent.[6]  ***Id.*** at 33.  By contrast, the motorist was driving below the speed limit, had to contend with the headlights of oncoming vehicles, and did not see the teenager walking in the street until the cars passed.  At that point, there was no evidence that it would have been physically possible for him to avoid the accident.  ***Id.*** at 34.  Because the motorist was not proven negligent, the appellate court reversed the judgment assessing him fifty percent fault and entered judgment in his favor.  ***Id.***

¶22.    Likewise in ***Bink v. Blackwell***, 429 So. 2d 228 (La. Ct. App. 1983), the Louisiana Court of Appeals affirmed a trial court's finding that a pickup truck driver who hit a woman walking alongside the road at night was not at fault.  Like Owens, the pedestrian in ***Bink***

---

[6] The ***Johnson*** court noted that, under Louisiana statute, "Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction." ***Johnson***, 741 So. 2d at 33-34 (quoting La. Stat. Ann. § 32:216(B)).

9

argued the truck driver could have avoided the accident and, thus, was at fault.[7] The appellate court disagreed, finding it was "by no means clear that the [driver]," who was traveling at a safe speed, "should have seen the [pedestrian]," who had been wearing dark clothing and walking on the side of the road in the same direction as oncoming traffic. *Id.* at 231.

¶23. Here, the evidence supports the jury's conclusion that Owens, and only Owens, breached his duty of care. Like the motorist in *Johnson*, Gates was traveling slowly and did not see Owens in time to avoid the accident. By contrast, like the pedestrian in *Bink*, Owens was walking in the lane of travel of an unlit highway, with his back to oncoming traffic and wearing dark clothing. So the jury's verdict is consistent with factually similar cases applying Louisiana law.

### B. Weight of the Evidence

¶24. The jury's verdict is also supported by the evidence. On appeal, Owens argues the overwhelming weight of the evidence showed Gates had been distracted "almost certainly from using his cell phone while driving." But this argument dismisses both the evidence that Gates had not been distracted and the evidence Owens was struck in the lane of travel as

---

[7] *Bink* predates *Turner* by two years. At that time, contributory negligence was a complete defense—except in motorist-pedestrian accidents. *Bink*, 429 So. 2d at 230 (discussing *Baumgartner v. State Farm Mut. Ins. Co.*, 356 So. 2d 400, 405 (La. 1978)). Under the *Baumgartner* ruling, a motorist could not simply point to the pedestrian's negligence to excuse him from any fault. *Id.* Instead, *Baumgartner* held that a motorist should anticipate situations where a pedestrian may not act prudently and, thus, bears the burden to avoid the accident when the exercise of due care provides the opportunity to do so. *Id.* By the time of *Turner*, Louisiana had abolished by statute the contributory-negligence defense and adopted comparative negligence instead. So *Baumgartner* was "no longer needed." *Turner*, 476 So. 2d at 804-05.

simply not credible. However, credibility determinations are made by the jury, not an appellate court.

¶25. This Court has been clear that, "[w]hen testimony is contradicted"—as it was here—"this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial." *Venton v. Beckham*, 845 So. 2d 676, 684 (Miss. 2003) (quoting *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992)). Indeed, this Court "will show great deference to the jury verdict by resolving all conflicts in the evidence and every permissible inference from the evidence in the appellee's favor." *Id.* The jury heard conflicting evidence about Gates's cell-phone usage and alertness at the time of the accident. There was also conflicting evidence about whether Owens had been wearing an orange vest over his dark clothing and about where he was standing when he was struck. When these conflicts are resolved in Gates's favor, the jury's verdict is supported by the record and is not against the overwhelming weight of the evidence. Therefore, the trial court did not abuse its discretion when it denied Owens's motion to alter the verdict or, alternatively, for a new trial.

## II. Owens's Drug Use

¶26. Owens also claims the jury's verdict was "improperly influenced by something other than the admitted evidence."

¶27. The first supposed "improper influence" is Owens's history of drug use.[8] Owens claims the defense emphasized his substance abuse "to deliberately appeal to the biases and prejudices of the jury." Owens *concedes* his history of drug use was relevant to the question of Owens's own negligence and the extent and causation of his injuries. Yet he argues the defense improperly used this relevant evidence to inflame the jury against him. He points to Mississippi Rule of Evidence 403, arguing "[e]ven where relevant, this type of evidence should be excluded if its probative value is outweighed by the danger of unfair prejudice." But he fails to cite anywhere in the record where he asked the trial judge to exclude certain evidence of his drug abuse under Rule 403.

¶28. Owens broadly asserts that two defense witnesses, Mills and Dr. Mark Webb, "served virtually no other purpose than to inundate the jury with inflammatory, cumulative, and improper evidence." However, Mills's testimony that Owens now claims was particularly offensive—her testimony "about completely irrelevant domestic incidents and criminal charges"—was given *without objection*. And while Owens did lodge a *Daubert* challenge to Dr. Webb's expert testimony, his objection was that Dr. Webb, a forensic psychiatrist, should not be allowed to rebut his experts, a neurologist and neuropsychologist.[9] He did not

---

[8] While Owens also claims the jury's verdict was improperly influenced by "hearsay," Owens neither specifies what evidence he claims was hearsay nor points to any objection to its admission. As this Court has held, "unobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991).

[9] On appeal, Owens is *not* arguing that the trial court reversibly erred when it overruled his *Daubert* objection and allowed Dr. Webb to testify as an expert. *See Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 35 (Miss. 2003) (adopting the test for

object at trial to the portion of Dr. Webb's testimony concerning Owens's drug use as unfairly prejudicial under Rule 403. So he cannot now raise this issue for the first time on appeal. ***Miss. Dep't of Human Servs. v. Moore***, 632 So. 2d 929, 933 (Miss. 1994) (citing Miss. R. Evid. 103(a)(1); ***Anderson v. Jaeger***, 317 So. 2d 902, 907 (Miss. 1975); ***Johnson v. Fargo***, 604 So. 2d 306 (Miss. 1992)). This issue was simply not preserved.

¶29. The only specific objection Owens cites in his brief was his objection to Dr. Webb's testifying about one of Owens's medical reports. This report had been prepared by another psychiatrist, Dr. Peter Camp. And he insists that report was unreliable to form the basis of Dr. Webb's expert opinion. But the trial court *sustained* this objection. And Dr. Webb was prohibited from testifying about Dr. Camp's report.

¶30. While Dr. Camp's report later was admitted into evidence, the trial court ruled it was admissible as part of Owens's medical records, which Owens himself had authenticated. We discern no reversible error in the admission of Dr. Camp's report or any other evidence of Owens's substance abuse. Both Owens and his team of experts corroborated his history of drug addiction. And Owens does not deny this evidence was relevant. Therefore, it was admissible. *See* Miss. R. Evid. 402.

### III. Justice Court Judge Abraham Gates

¶31. Owens also takes issue with Judge Gates's serving as a jury consultant for the defense. Owens argues Judge Gates not only served as a jury consultant, but also his role as a part-

_____

determining the admissibility of expert witness testimony set forth in ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), *as modified in* ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

time judge improperly benefitted his cousin, in violation of the Mississippi Code of Judicial Conduct. In fact, the only law Owens cites are Canons 1 and 2B of the Code of Judicial Conduct.[10] But the Code of Judicial Conduct "is designed to provide guidance to judges . . . and to provide a structure for regulating conduct through disciplinary agencies." Miss. Code of Judicial Conduct Preamble (2018). This is not a judicial-discipline proceeding against Judge Gates. It is an appeal of a jury verdict in a civil trial. And as the Code itself cautions, its designated purpose "would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding." *Id.* Instead of articulating how the judge who presided over his trial reversibly erred, it appears Owens is trying to invoke the Code—against a non-presiding judge outside of that judge's court—as a means to gain a new trial where he otherwise is not entitled to one.

¶32. For example, Owens claims the circuit judge, the Honorable Jannie Lewis, should never have allowed Judge Gates to "participate" in the trial. But as Judge Lewis recognized, Judge Gates was allowed as a part-time judge "to practice law or any other profession or occupation." Miss. Code of Judicial Conduct Terminology (2018). Had Judge Gates been an attorney, he could have *tried* the case for the defense. So we fail to see why his position as justice court judge precluded him from attending trial.[11]

---

[10] In particular, he asserts Judge Gates's actions are akin to the example given in the comment to Canon 2B: "A judge must avoid lending the prestige of judicial office for the advancement of the private interest of others. For example, a judge must not use the judge's judicial position to gain advantage in a civil suit involving a member of the judge's family." Miss. Code of Judicial Conduct Canon 2B cmt. (2018).

[11] While Owens repeatedly claims Judge Gates "participated" in the trial, it appears from the record that Judge Gates's only participation in his role as a jury consultant was

¶33. Owens also, without citing any authority, claims Judge Lewis should have granted his motion for a mistrial. Uniform Rule of Circuit and County Court Practice 3.12 does permit the trial court to grant a motion for mistrial if a party, a party's attorney, or someone acting at the behest of the other party or party's attorney engages in misconduct, inside or outside of the courtroom, that substantially and irreparably prejudices the movant's case. URCCC 3.12. In reviewing Owens's mistrial claim, the question is not, as Owens's frames it, whether Judge Gates engaged in "misconduct" that would subject him to judicial discipline. Instead, the question is did the trial judge abuse her discretion when she found no mistrial was warranted based on the jurors' responses to voir dire as to Will Gates's relationship to Judge Gates and any impact Judge Gates's presence would have on their impartiality.

¶34. Owens's complaint that his case was substantially and irreparably prejudiced by Judge Gate's "physical presence in the courtroom" has no support in the record. The trial judge addressed the issue of Judge Gates's presence during voir dire the day before Owens moved for mistrial. *See Ross v. State*, 954 So. 2d 968, 988 (Miss. 2007) ("In general, a voir dire is presumed sufficient to ensure a fair and impartial jury."). During voir dire, all venire members responded affirmatively when asked if they knew or knew of Judge Gates. But as this Court has observed, in rural counties like Humphreys County, Mississippi, "it [is] not unusual for potential jurors to know parties and witnesses in trials" and "finding jurors with

---

*attending* trial. Judge Gates, a non-lawyer, did not ask the venire questions or otherwise interact with the jury on behalf of the defense. Before the jury was selected, as soon as Owens's counsel alerted Judge Lewis to his presence, Judge Lewis asked Judge Gates to leave counsel table, because he was not a licensed attorney. The only thing Judge Lewis did not do that Owens insists she should have is forbid Judge Gates from coming to court.

no knowledge of the case or the parties [can be] difficult."[12] ***Payton v. Smith***, 897 So. 2d 921, 953-54 (Miss. 2003). Moreover, counsel followed up by asking if Judge Gates's presence would influence the jurors' decision. The group collectively answered that Judge Gates would not influence their decision "one way whatsoever." And "[t]his Court will treat with deference a venire person's assertions of impartiality." ***Ross***, 954 So. 2d at 988 (citing ***Holland v. State***, 705 So. 2d 307, 336, 399-40 (Miss. 1997)) ("This Court has held that a defendant fails to show the necessary prejudice where . . . the venire members have made general declarations that they could set aside their prejudices and reach a decision based on the evidence.").

¶35.   However, the overarching principle is that this Court defers to the trial judge's ruling on a motion for a mistrial. Because a "trial judge is in a better position to assess the effect of incidents which may require a mistrial than is this Court on appeal, . . . this Court will not reverse on the failure to grant a mistrial unless the judge abused [her] discretion in overruling the motion for a mistrial." ***Cavett v. State***, 717 So. 2d 722, 729 (Miss. 1998) (quoting ***Bredemeier v. Jackson***, 689 So. 2d 770, 774 (Miss. 1997)). Because the venire indicated that they could be fair and impartial, Judge Lewis did not abuse her discretion when she denied Owens's motion for a mistrial, premised solely on Judge Gates's attendance at trial. *See* ***Payton***, 897 So. 2d at 953-54 (finding no abuse of discretion when "jurors assured the

---

[12] We note it was Owens who chose to proceed in Humphreys County where Will Gates resided, even though other venues were available, such as Rankin County, Mississippi, St. Tammany Parish, Louisiana, and federal courts in either state, as there was complete diversity jurisdiction. *See* 28 U.S.C. § 1332.

court and the attorneys that their familiarity with witnesses would not influence their ability to be fair and impartial").

¶36. Therefore, we affirm.

¶37. **AFFIRMED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., COLEMAN AND ISHEE, JJ.**

**RANDOLPH, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶38. I agree that the trial judge committed no error. Whether Justice Court Judge Abraham Gates's conduct violated the Code of Judicial Conduct as claimed by Owens is for determination by the Mississippi Commission on Judicial Performance. *See* Miss. Const. art. 6, § 177A.

**WALLER, C.J., COLEMAN AND ISHEE, JJ., JOIN THIS OPINION.**